**VANGO MEDIA, INC., Plaintiff,**

v.

**The CITY OF NEW YORK, The New York City Department of Health, and The New York City Taxi and Limousine Commission, Defendants.**

**No. 93 Civ. 706 (LMM).**

United States District Court,
S.D. New York.

June 1, 1993.

---

Nicholas E. Poser, Rabinowitz, Boudin, Standard, Krinsky & Lieberman, P.C., New York City, for plaintiff Vango Media, Inc.

O. Peter Sherwood, Corp. Counsel of the City of New York (Lisa S.J. Yee, of counsel), New York City, for all defendants.

Melvin L. Wulf, Beldock Levine & Hoffman, New York City, brief of amici curiae Albert Einstein Cancer Center/Montefiore Hosp., et al.

## MEMORANDUM AND ORDER

McKENNA, District Judge.

With this Memorandum and Order, the Court decides Plaintiff Vango Media, Inc.'s ("Plaintiff" or "Vango") motion for summary judgment seeking declaratory and injunctive relief pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.") and Defendants the City of New York's, the New York City Department of Health's and the New York City Taxi and Limousine Commission's ("Defendants" or "the City") motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6).

For the following reasons, the Court grants Plaintiff's motion for summary judgment, and denies the City's motion to dismiss as moot.

## I.

### *Background*

Vango brings this action to challenge Local Law No. 83 of 1992 of the City of New York ("the Local Law") which amends, *inter alia,* the Administrative Code of the City of New York in relation to tobacco products. Vango is a New York company involved in the business of displaying advertising signs on the roofs of New York City taxicabs. A provision of the Local Law adds a new Section 17–621 to the Administrative Code of the City of New York which requires the display of a minimum of one public health message pertaining to the health dangers of smoking for every four tobacco advertisements on certain property and facilities owned, operated or licensed by the City of New York. In its Complaint, Vango challenges the application of the Local Law to it, alleging six causes of action on a variety of statutory, constitutional and other grounds.

In this motion for summary judgment, Vango seeks declarative and injunctive relief on three of the claims raised in the Complaint.[1] First, Vango argues that the imposition of local mandatory anti-smoking message requirements whenever and wherever certain tobacco advertisements are displayed is preempted by the Federal Cigarette Labeling and Advertising Act (current version shortened to "the Federal Act"), 15 U.S.C. §§ 1331–1340 (as amended) (1988). Second, Vango asserts that the Local Law violates its First Amendment rights because it requires Vango to pay for and display messages written by third parties and approved by government officials, the content and viewpoint of which are contrary to the cigarette advertisements Vango displays.

Vango's third argument on the present motion is that with respect to some, but not all, of its taxicab tobacco advertising, it is exempt from the reach of the anti-smoking provisions of the Local Law. The Local Law exempts from its requirements holders of valid City licenses or advertising permits if the holders are parties to valid contracts entered into on or before the date of enactment of the Local Law if compliance with the Local Law would result in a material breach of the contracts. Prior to the Local Law's enactment, Vango and the representatives of some of the taxicab companies with which it has previously contracted to install and display advertising entered into a new five year contract that specifies that compliance with the new law would constitute a material breach of the contract. Regarding this particular contract only, Vango seeks a declaratory judgment that it is not subject to the Local Law until the expiration of this contract.

Defendants argue that the Local Law is not preempted by federal law. They contend that the Local Law is a valid exercise of the City's police power, advances a substantial local interest by means no more extensive than necessary to serve that interest, and that it violates no federal or state law or constitutional provision. In addition, Defendants assert that dismissal is appropriate because both Plaintiff's request for a declaratory judgment respecting its exemption from the requirements of Local Law Section 17–621 and its attendant constitutional claims may be rendered moot because Defendants have not yet determined Plaintiff's claim for an exemption, and a favorable determination regarding Vango's exemption under the Local Law could avoid the need to reach the constitutional issues.

\*　　\*　　\*

Under the City Administrative Code, the Taxi and Limousine Commission (TLC) issues one-year permits costing $50.00 per cab for the cab to carry exterior advertising. Admin.Code of the City of New York § 19–525. (Compl. ¶ 17.)

Vango states that it has been in the business of displaying advertisements on the exterior of City taxicabs since 1975. Vango enters into contracts with taxicab companies under which it pays for the right to install and maintain its own frames (which hold the advertisements Vango obtains). (Id. at ¶ 14.) Vango currently pays approximately $850,-000.00 annually to taxicab companies to display advertisements on approximately 1,600 cabs. (Id. at ¶ 15.) Vango has a contract with the Metropolitan Taxi Board of Trade (MTBOT), which represents a large number of taxicab companies, involving 1,400 of the 1,600 cabs on which Vango now has adver-

---

1. Vango seeks to expedite resolution of its claims because of the allegedly adverse effects the Law will have on Vango's contractual relations, its ongoing business and its free speech rights. It contends that these three claims are dispositive and that they can be resolved without discovery.

　Plaintiff's motion seeks declaratory and injunctive relief on its first (preemption); second (First Amendment to the U.S. Constitution); and fourth (exemption based on contract between Vango and MTBOT) causes of action. In its Reply Memorandum, Vango asserts that its motion seeks judgment on both its federal and state

constitutional claims for violation of its freedom of speech (third cause of action alleges violation of Article 1, Section 8 of the New York State Constitution). Defendant apparently disagrees that Vango's motion seeks judgment on this third cause of action. (Def. Reply Mem. & Mem. in Opp. at 1 n. 1.) Plaintiff also claims impairment of its contractual relations in violation of the Contract Clause (fifth cause of action) and an uncompensated taking of its property in violation of the Fifth Amendment to the U.S. Constitution (sixth cause of action).

tisements. Regardless of whether or not Vango is able to obtain advertisements for all of the cabs for which it has contracted with MTBOT, it must pay for the space on all 1,400 cabs. Its failure to obtain advertising is not a ground for termination under the MTBOT contract. (Kanefield Decl. at ¶¶ 6–7.) In addition to the MTBOT contract, Vango has renewable five-year contracts for the right to install and maintain exterior taxicab advertisements on approximately 200 cabs with three other companies. (*Id.* at ¶ 10 and Exs. C & D.) Under these contracts, Vango must pay a monthly fee for the right to place advertisements on the cabs, prorated for any month in which the companies' cabs do not carry advertisements. If Vango fails to obtain paid advertising on company taxicabs for three successive months, either Vango or the companies may terminate the agreements on thirty days written notice. (Kanefield Decl. ¶ 10.) Under all of its contracts, Vango has the sole and continuing obligation to pay the necessary City advertising permit fees. (*Id.* ¶ 12.)

Vango is also party to a contract with a tobacco advertiser to place cigarette advertisements on 1,150 New York taxicabs. (Compl. ¶ 18.) These advertisements are lawful and meet all the requirements of the Cigarette Labeling and Advertising Act, 15 U.S.C. §§ 1331–1340 (1988). (*Id.* ¶ 19.) The terms of the contract grant the advertiser the right to terminate the contract on 60 days' notice. (Kanefield Decl. ¶ 15.) Vango asserts that 82% of its current paid advertisements are cigarette advertisements. Historically, 75% of Vango's advertising revenue has come from cigarette advertisers. (*Id.* at ¶ 17.)

On October 8, 1992, the New York City Council adopted the Local Law, and the Mayor approved it on October 27, 1992. The Local Law is to become effective 180 days following enactment, on April 26, 1993. Section 1 sets forth the Council's declaration of legislative findings and intent. Section 1 be-

gins with a lengthy statement of the known risks of smoking, including national and New York City smoking-related health statistics, and discussion of the high incidence of smoking in young people. The declaration continues with the Council's findings that tobacco use has high economic costs to taxpayers, in the form of direct health care costs and indirect costs, such as loss of productivity among city workers. Section 1 then states:

> The Council concludes that the enormous public costs resulting from tobacco addiction must be decreased by attempting to discourage all New Yorkers from the use of tobacco products. The Council deems the placement of tobacco product advertisements on ... certain property or facilities licensed by the city, inappropriate and contrary to the general welfare of the city's residents. It is the Council's desire to eliminate tobacco product advertisements from such properties and facilities. However, if such tobacco product advertisements are permitted on these properties and facilities, it is the intention of the Council to require the placement of at least one public health message for every four tobacco advertisements placed or appearing in or on ... certain property and facilities licensed by the City of New York. It is not the intent of the Council to require the placement or display of such public health messages on privately owned real property.[2]

(*See* Section 1 of Local Law No. 83, Ex. 1, Poser Decl.)

Section 2 of Local Law No. 83 amends Title 17 of the City Administrative Code by adding a new Chapter 7, comprising Sections 17–616 to 17–626, and entitled, "Tobacco Product Regulation Act." Section 17–621a(1) states in pertinent part: "There shall be a minimum of one public health message placed or displayed in or on a unit of advertising space for every four tobacco advertisements placed or displayed in or on such unit." The Local Law defines "a unit of

---

**2.** This quotation omits the provision's reference to property "owned or operated by, or leased from or to the city;" Vango does not challenge application of the law to property "owned or operated by the [C]ity." (Pl. Mem. in Support of Motion, at 6 n. 2); N.Y. City Admin. Code § 17–

617u(i). Therefore, this Court's Memorandum and Order does not reach the issue of whether the Federal Act preempts the Local Law other than as applied to advertising space on privately owned property with respect to which the City issues a permit.

advertising space" to include exterior advertisements on taxicabs, because they are a "facility or instrumentality of public transportation ... with respect to which a license or permit has been issued by the city that expressly grants the right to place or display advertisements." N.Y. City Admin. Code § 17–617u. "Public health message" is defined as "words, pictures, photographs, symbols, graphics or visual images of any kind, or any combination thereof, the primary purpose of which is to communicate the health risks of tobacco product use or the health benefits of not using tobacco products." N.Y. City Admin. Code § 17–617j. The Local Law requires that the anti-smoking messages must "to the greatest extent possible, be comparable in size, location and visibility to the tobacco advertisements," must "be installed and maintained by the holder of the right to place or display advertisements ... in accordance with the same standards" as tobacco advertisements, and must "utilize the same materials and methods for display" as are used for the tobacco advertisements. N.Y. City Admin. Code § 17–621a(2).

The Local Law places responsibility for compliance on "the holder of the right to place or display advertisements in or on a unit of advertising space" and sets forth daily recordkeeping and quarterly reporting requirements. N.Y. City Admin. Code § 17–621b(1)–(2). It further states that "[a]ny costs associated with the posting of the public health messages required by this section and any costs in terms of foregone advertising revenues associated with the placement or display of such public health messages shall be borne by the holder of the right to place or display [them]." N.Y. City Admin. Code § 17–621d.

The Department of Health is required to encourage the creation and submission of public health messages and any interested individual, group or other entity may submit such messages by its own initiative. N.Y. City Admin. Code § 17–621c & e. The Department of Health selects messages which the Department deems "to communicate most effectively the health risks of tobacco product use or the health benefits of not using tobacco products." N.Y. City Admin.

Code § 17–621e(1). The Taxi and Limousine Commission (TLC) then reviews the messages selected by the Department for conformance to standards of form, appearance, and appropriateness applicable to any advertisements under its permit procedures. N.Y. City Admin. Code § 17–621e(2) The holder of the right to display may make recommendations on form, appearance and appropriateness for display, but it may not make recommendations as to the content of the messages. Id. The TLC makes the final determination as to which messages will be provided to the holder to be displayed, and the holder may then choose from among those to fulfill the required ratio of anti-smoking messages under the Local Law. Id.

The Local Law further provides that any person who knowingly makes a false statement or who falsifies any record or report required by the Local Law is guilty of a misdemeanor and liable for a civil penalty. N.Y. City Admin. Code § 17–624. The Department of Health and employees of other authorizing agencies "shall enforce the provisions" of the Local Law, § 17–623, and the City may seek an injunction for violation of the Local Law. N.Y. City Admin. Code § 17–624d.

The holder of a valid permit from the City in effect on the date of enactment is not subject to the mandatory anti-smoking message requirements for the duration of the permit. N.Y. City Admin. Code § 17–621g. Vango's permits for exterior advertising on taxicabs run for one year and expire on August 31. N.Y. City Admin. Code § 19–525(b).

The Local Law specifically exempts from compliance holders of a permit to display advertisements who are parties to a valid contract with another entity that extends beyond the expiration of the permit where compliance with the Local Law's mandatory anti-smoking message requirements would result in a material breach of its contract. N.Y. City Admin. Code § 17–621h. This subdivision further provides that within ten days of the effective date of the Local Law, such permit holder must notify the authorizing agency for the unit of advertising space in writing of its inability to comply, the rea-

sons therefor, and the earliest date by which compliance will be possible. The Local Law provides no affirmative procedure for a party to ascertain whether City authorities accept its claim for exemption. The Local Law does provide for an administrative tribunal to levy civil penalties for failure to submit a required written notification of claimed exemption and for "false or misleading" statements in such notices. N.Y. City Admin. Code §§ 17–621h(2) and 17–624b.

Vango explains that compliance with the Local Law would subject it to significant economic hardship. Because of the requirements of the Local Law, it would automatically have to forego approximately 16.5% of its total advertising revenue (20% of its cigarette advertising revenue) or contract for 25% additional advertising permits, equipment, and space, without compensation, merely to maintain its current revenues. Moreover, Vango asserts that its cigarette advertiser has given it "clear indication" that it will terminate its contract with Vango if the Local Law is valid and applicable to Vango. (Kanefield Decl. ¶ 18.) Vango also points out that in addition to losing 82% of its revenues under the cigarette advertising contract, it will still be liable to the MTBOT for the full number of taxicabs for which it has contracted (1,400 total cabs, 1,150 of which have carried cigarette advertisements pursuant to its contract with a cigarette advertiser). (*Id.* at ¶ 23.) The remaining contracts could be terminated by the cab companies after three successive months without advertisements. Vango emphasizes that a prompt determination of the Local Law's validity prior to August 31, 1993, is necessary if Vango is to save its business and decide what business decisions must be made, such as whether replacement advertisers can be found if the Local Law is valid and whether to reinvest in $80,000.00 worth of permits prior to August 31. Vango contends that violating the Local Law and subjecting itself to an enforcement proceeding after the Local Law is operative will harm its reputation as well as its finances.

On September 22, 1992, Vango contracted with MTBOT for a new five-year contract in anticipation of the enactment of the then proposed Local Law. The contract refers to the Local Law, acknowledges that tobacco advertisements have constituted a substantial portion of the advertising obtained by Vango to display on MTBOT cabs, and states that compliance with the Local Law may jeopardize the placement of such advertisements. The contract then specifies that compliance with the Local Law would constitute a material breach.[3] Vango asserts that it is exempt from compliance for the taxicabs covered by this contract with the MTBOT.

## II.

### *Discussion*

■ Vango argues that it is entitled to a declaratory judgment finding that the provisions of the Local Law requiring display of anti-smoking messages in connection with the display of any tobacco advertisements are invalid because they are preempted by the Federal Act, and that Vango is therefore entitled to an injunction prohibiting enforcement of such provisions. The Court agrees with Vango that the Local Law is preempted by the Federal Act.

Preemption doctrine is based upon the Supremacy Clause of the Constitution, which provides that the "... Laws of the United States... shall be the Supreme Law of the Land; ... any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." U.S. Const. art. VI, Cl. 2. The Supreme Court long ago held that "basic to this constitutional command" is the fact that all state law that conflicts with federal law is without effect. *Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 2128, 68 L.Ed.2d 576 (1981) (citing *McCulloch v. Maryland,* 4 Wheat. 316, 427, 4 L.Ed. 579 (1819)). Congress has chosen to enact a comprehensive nationwide scheme to regulate cigarette advertising. Because the preemption argument is dispositive to this action, the Court need not discuss Plaintiff's other claims, constitutional and other. The

**3.** Vango notes that if the contract is terminated because of such "material breach," then the prior contract with the MTBOT is reinstated and

Vango is liable for the full number of taxicabs contracted for, whether or not the cabs carry advertisements. (Kanefield Decl. ¶ 9 & Ex. A.)

Court of Appeals for the Third Circuit explains the rationale for this approach:

> Although the supremacy clause claim arises under the Constitution, it involves consideration of a state and a federal statute to determine if they conflict rather than interpretation of a substantive provision of the Constitution.... Therefore we normally would consider the supremacy clause claim first because, if dispositive, it would obviate the need to decide the substantive constitutional question.

*Finberg v. Sullivan,* 634 F.2d 50, 56 (3rd Cir.1980) (citing *Hagans v. Lavine,* 415 U.S. 528, 549, 94 S.Ct. 1372, 1385, 39 L.Ed.2d 577 (1974)).

Because the Court determines that the Local Law may not be applied against Plaintiff and that the City thus has no role in determining Plaintiff's claim of exemption, Defendants' Motion to Dismiss is denied as moot.

▮▮▮ In this Court's view, the Federal Act expressly preempts the Local Law at issue here. In *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), the Supreme Court explained that preemption may be express or implied, that it "is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Id.* at 95, 103 S.Ct. at 2898 (quoting *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977)) (other citations omitted). In the present case, the preemption provision explicitly bars the Local Law; the Court need only consider the contention that the Federal Act's structure and purpose implicitly preempt the Local Law to supplement its analysis of the express preemption provision.

When the statute's language is plain, the function of the Court is to enforce it according to its terms. *West Virginia University Hospitals, Inc. v. Casey,* 499 U.S. 83, 98–99, 111 S.Ct. 1138, 1147, 113 L.Ed.2d 68 (1991) (citations omitted). Where the exercise of state or local police powers is involved, through a provision to protect the health, safety or general welfare of residents, Congress' purpose to preempt such local regulation must be " 'clear and manifest' " to "overcome the presumption that state and local regulation of health and safety matters can constitutionally coexist with federal regulation." *Hillsborough County v. Automated Medical Laboratories, Inc.,* 471 U.S. 707, 715–16, 105 S.Ct. 2371, 2375–76, 85 L.Ed.2d 714 (1985) (quoting *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977)).

This Court's own evaluation of the Federal Act's preemption provision must be governed to a large extent by the Supreme Court's analysis in *Cipollone v. Liggett Group, Inc.,* —— U.S. ——, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992).[4] The Local Law at issue in the present case is distinct from the state laws underlying the *Cipollone* case. *Cipollone* dealt with whether certain civil damage actions were preempted by the Federal Act in a suit to recover from cigarette manufacturers after a smoker contracted lung cancer. This Court is convinced that the Local Law at issue in this case is, in fact, a better candidate for preemption than the state law provisions at issue in *Cipollone* and that the analysis in all three opinions in that case fully support this Court's conclusion that Congress intended to preempt precisely the type of local regulation at issue here.

4. Justice Stevens announced the judgment of the Court and delivered the opinion with respect to Parts I–IV, in which Rehnquist, C.J. and White, Blackmun, O'Connor, Kennedy, and Souter, JJ., joined, and an opinion with respect to Part V and VI, in which Rehnquist, C.J., and White and O'Connor, JJ., joined. Blackmun, J., filed an opinion concurring in part, concurring in the judgment in part, and dissenting in part, in which Kennedy and Souter, JJ., joined. Scalia, J., filed an opinion concurring in the judgment in part and dissenting in part, in which Thomas, J., joined.

Parts III and V contain the analysis most relevant to the present action. Part III was widely supported, including by Scalia and Thomas, JJ. *See* —— U.S. at ——–——, 112 S.Ct. at 2632–33. Part V contains the holdings most controversial in this opinion (but with which Scalia and Thomas, JJ., also agreed, *see* —— U.S. at ——, 112 S.Ct. at 2634). In any event, in this Court's view, the preemption analysis in the present case is more straightforward, and language from all three opinions lends support to the present analysis.

The Public Health Cigarette Smoking Act of 1969 ("1969 Federal Act") amended the Cigarette Advertising and Labeling Act of 1965 ("1965 Federal Act").[5] Section 5 of the 1969 Federal Act amended the preemption provision of the 1965 Federal Act[6] to its present form:

> (b) No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this Act.

15 U.S.C. § 1334(b) (1988).[7]

The language is clear and, therefore, there is no reason for this Court to resort to searching for Congress' intent in the Federal Act's structure and purpose to determine whether Congress in fact intended to preempt the field at issue here.

In our opinion, the pre-emptive scope of the 1965 Act and the 1969 Act is governed entirely by the express language of § 5 of each Act. When Congress has considered the issue of pre-emption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a "reliable indicium

of congressional intent with respect to state authority," *Malone v. White Motor Corp.*, 435 U.S. [497,] 505 [98 S.Ct. 1185, 1190, 55 L.Ed.2d 443] [1978], ... "there is no need to infer congressional intent to pre-empt state laws from the substantive provisions" of the legislation. *California Federal Savings & Loan Ass'n v. Guerra*, 479 U.S. 272, 282 [107 S.Ct. 683, 689, 93 L.Ed.2d 613] (1987).

*Cipollone*, —— U.S. at ——, 112 S.Ct. at 2618. The plurality was therefore convinced that the language of the preemption provisions (in *Cipollone*, it was necessary to consider the provisions of both the 1965 and 1969 Federal Acts) was dispositive and the only issue was to "identify the domain expressly pre-empted" by each provision. *Id.* *Cipollone* viewed the preemption provision in the 1969 Federal Act as "much broader" than its predecessor in the 1965 Federal Act.[8]

The parties disagree as to whether, in the terms of the 1969 Federal Act, the Local Law imposes a "requirement or prohibition based on smoking and health ... with respect to the advertising or promotion of any cigarettes."[9]

---

5. In *Cipollone*, the Supreme Court states the substantive amendments to the 1965 Federal Act.

    First, the 1969 Act strengthened the warning label, in part by requiring a statement that cigarette smoking "is dangerous" rather than that it "may be hazardous." Second, the 1969 Act banned cigarette advertising in "any medium of electronic communication subject to [FCC] jurisdiction." Third, and related, the 1969 Act modified the pre-emption provision by replacing the original § 5(b). ...
    *Cipollone*, —— U.S. at ——, 112 S.Ct. at 2617.

6. The corresponding preemption provision in the 1965 Federal Act read:

    (b) No statement relating to smoking and health shall be required in the advertising of any cigarettes the packages of which are labeled in conformity with the provisions of this Act.
    Pub.L. 89–92, 79 Stat. 283, 15 U.S.C. § 1334(b) (1964 & Supp. I 1965) (current version at 15 U.S.C. § 1334(b) (1988)).

7. Congress' purpose in narrowing the provision to prohibit only restrictions "imposed under State law" was to enable the FTC to extend the warning-label requirement to print advertisements for cigarettes. The 1969 Federal Act prohibited FTC action in this respect prior to July 1, 1971. In 1972, the FTC so extended labeling

requirements. *See Cipollone*, —— U.S. at ——, 112 S.Ct. at 2617.

    Currently, the Federal Act requires that every package of cigarettes sold or distributed in the United States and any advertising of cigarettes conspicuously carry one of four Surgeon General's warnings which address the various health risks of smoking cigarettes such as cancer, heart disease, pregnancy complications, etc.

8. The Supreme Court in *Cipollone* specifically said:

    Compared to its predecessor in the 1965 Act, the plain language of the pre-emption provision in the 1969 Act is much broader. First, the later Act bars not simply "statements" but rather "requirement[s] or prohibition[s] ... imposed under State law." Second, the later Act reaches beyond statements "in the advertising" to obligations "with respect to the advertising or promotion" of cigarettes.
    *Id.* at ——, 112 S.Ct. at 2619.

9. The parties do not dispute that the phrase "under State law" includes any political subdivision of any State, such as New York City. *See* 15 U.S.C. § 1332(3) (defining "State" to include political subdivisions in the 1969 amendments).

    Nor do the parties dispute that the advertisements displayed by Plaintiff, as well as the adver-

The plurality opinion in *Cipollone*, with the concurrence of the other justices, read the phrase "requirement or prohibition" to include and extend beyond positive enactments, to include certain common law damage actions. Justices Scalia and Thomas agreed with the plurality that " 'the language of the [1969 Federal] Act plainly reaches beyond [positive] enactments.' " *Id.* at ——, 112 S.Ct. at 2634 (quoting *id.* at ——, 112 S.Ct. at 2620). The remaining three Justices declined to agree with the majority that the preemption provision encompassed common-law damage actions, but they agreed that Congress intended the provision to preempt "positive enactments such as statutes and regulations." *Id.* at ——, 112 S.Ct. at 2627. Clearly, the Local Law constitutes a "requirement" in the form of a positive enactment by the City.

Defendants contend that the Local Law does not require or prohibit anything with respect to the content, format or display of cigarette advertisements and that it is therefore outside of the preemptive scope of § 1334(b). In this Court's view, the Local Law conditions the legality of displaying cigarette advertisements on compliance with the letter of the Local Law and, therefore, it falls within the scope of the preemption provision.[10]

Defendants further argue that, because responsibility for the display of public health messages falls upon the shoulders of "the holder of the right to place or display adver-

tisements in or on a unit of advertising space," N.Y.C. Admin.Code § 17–621b, Plaintiff cannot "be heard to complain that the City's law imposes a restriction or prohibition on the advertising or promotion of cigarettes." (Def.'s Mem. in Support of Motion to Dismiss, at 12.) Insofar as the Court reads Defendants' argument to mean that, because Plaintiff is not the advertiser or in the business of advertising or promoting cigarettes *per se*, the preemption provision cannot cover the Local Law, the Court disagrees.[11] Quite simply, the clause "with respect to the advertising or promotion of . . . cigarettes" means what it says; the provision preempts requirements respecting cigarette advertising and does not limit its reach to advertisers or direct promoters of cigarettes affected by such requirements (as opposed to Vango which might be characterized as an "indirect" promoter).

The Local Law is also a requirement "with respect to the advertising or promotion of . . . cigarettes. . . ." because its applicability is triggered by the placement of cigarette advertisements.[12] The Local Law requires that: "There shall be a minimum of one public health message placed or displayed . . . for every four tobacco advertisements placed or displayed." N.Y. City Admin.Code § 17–621a(1). Moreover, the anti-smoking messages must be "placed or displayed in or on a unit of advertising space," § 17–621a, and they must "to the greatest extent possi-

---

tisers' cigarette packages, are labelled with the required federal warnings.

**10.** In this regard, the counter-advertising requirements operate to limit cigarette advertising. Given that, at any given moment, there are a finite number of taxicabs in New York for which one may acquire a permit to display advertisements, the Local Law functions to limit advertising. The Local Law also operates as a prohibition on cigarette advertising on the part of anyone who fails to fulfill the counter-advertising requirements. The Local Law's Declaration of legislative findings declares that it "is the Council's desire to eliminate tobacco product advertisements from [specified] properties and facilities."

**11.** Defendants may also be trying to argue that Vango lacks standing to challenge the Local Law on preemption grounds. This argument is clearly meritless; Vango has alleged injury-in-fact as

a result of the Local Law (*see* Compl. ¶¶ 34–39), and likelihood that the injury will be redressed by a favorable decision. *See Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982).

**12.** In *Cipollone*, the plurality stated that:

Section 5(b) pre-empts only the imposition of state law obligations "with respect to the advertising or promotion" of cigarettes. . . . Petitioner's claims . . . are . . . not pre-empted insofar as those claims rely on a state law duty to disclose . . . through channels of communication other than advertising or promotion. Thus, for example, if state law obliged respondents to disclose material facts about smoking and health to an administrative agency, § 5(b) would not pre-empt a state law claim based on a failure to fulfill that obligation.

*Cipollone*, —— U.S. at ——, 112 S.Ct. at 2623.

ble, be comparable in size, location and visibility to the tobacco advertisements" that trigger the requirement to display them, and they must be "installed and maintained ... in accordance with the same standard, and the holder shall utilize the same materials and methods for display, as are used by such holder for any [tobacco] advertisement placed or displayed in or on such unit." N.Y. City Admin. Code § 17–621a(2).[13] In short, any time anyone decides to present tobacco advertisements on facilities implicated by the Local Law, the individual must comply with the Local Law's requirements.

In *Cipollone*, the plurality noted the change from "in the advertising" in the 1965 Federal Act's preemption provision to the "broader" language "with respect to the advertising or promotion" in the 1969 Federal Act. *Cipollone*, —— U.S. at ——, 112 S.Ct. at 2619. The plurality opinion does not explain or analyze this particular change, but its view that "with respect to" is broad language intended by Congress to preempt a broad area is consistent with its analysis of similarly broad phrases used in other preemption provisions. In *Morales v. Trans World Airlines, Inc.*, —— U.S. ——, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992), the majority used the dictionary definition of "relating to" to inform its analysis of the preemption provision "relating to [airline] rates, routes, or services" in the Airline Deregulation Act, 49 U.S.C.App. § 1305(a)(1). *See id.* at ——, 112 S.Ct. at 2037. The majority also relied upon several other cases finding the preemption provision broad because of the ordinary meaning of the language used. *See, e.g., Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 138, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990) ("relate to" is "deliberately expansive language" "designed to establish [the preempted area] as exclusively a federal concern") (internal quotations and citations omitted); *Shaw v. Delta Air Lines, Inc.*, 463 U.S.

85, 96, 103 S.Ct. 2890, 2899, 77 L.Ed.2d 490 (1983) (the "breadth of [that provision's] preemptive reach is apparent from [its] language"). In *Morales*, the majority thus concluded that "[s]tate enforcement actions having a connection with or reference to airline "rates, routes, or services" are preempted." *Morales*, —— U.S. at ——, 112 S.Ct. at 2037. The definition of the relevant usage of the noun "respect" is "a relation to or concern with something usually specified." *Webster's Third New International Dictionary* (1986). The language used in the 1969 Federal Act revision is unquestionably broad, in particular when considered in contrast to the language used in the 1965 Federal Act. While the requirement imposed by the Local Law might arguably be creative enough to avoid being one "in the advertising," it surely is encompassed by the broader phrase "with respect to the advertising or promotion."

There is further support for Plaintiff's argument regarding Congress' intent to broaden the preemptive reach of the earlier clause "in the advertising." In *Banzhaf v. Federal Communications Commission*, 405 F.2d 1082 (D.C.Cir.1968), *cert. denied*, 396 U.S. 842, 90 S.Ct. 50, 24 L.Ed.2d 93 (1969), the Court of Appeals for the District of Columbia considered the 1965 Federal Act preemption clause in connection with an FCC action alleged to be precluded by the clause. The Court of Appeals stated:

> Since the [FCC's] ruling does not require the inclusion of any "statement ... in the advertising of any cigarettes," but rather directs stations which advertise cigarettes to present "the other side" each week, it does not violate the letter of the Act.

*Id.* at 1088. Congress was aware of the *Banzhaf* decision when it amended the 1965 Federal Act by, among other changes, substantially revising the preemption provision.[14] In their reports on the 1969 Federal Act,

---

**13.** As noted *supra,* the City Council's Declaration of the purpose of the Local Law reenforces that its essential nature is "with respect to advertising." The Council's desire was to reduce tobacco advertisements or, at the very least, to counter them with anti-smoking messages.

**14.** The issue in *Banzhaf* involved the FCC's decision to require that anti-smoking messages be

aired by stations airing cigarette advertisements. Given the significant changes made to the preemption provision in the 1969 amendments and the crucial differences in circumstances, the Court need not engage in comparing the issue decided in *Banzhaf* with the issue now before this Court.

both the House and Senate referred to the decision. S.Rep. No. 566, 91st Cong.2d Sess., *reprinted in* 1970 U.S.C.C.A.N. 2652, 2658; H.Rep. No. 289, 91st Cong. 1st Sess. 3 (1969). As the *Cipollone* plurality noted, Congress broadened the language; that broadening was a purposeful act, and one that clearly brings the Local Law within the terms of the clause "with respect to the advertising or promotion."

Defendants maintain that the Local Law is not "based on smoking and health" as required by Section 1334(b), because the City Council articulated economic costs to the City generated by tobacco use as well as smoking and health as its reasons for enacting the Local Law. Defendants are correct to note that Section 1334(b) does not aspire to reach local laws based upon concerns other than smoking and health; however, it is impossible to abstract Defendants' economic rationale from the Local Law's fundamental nature as a regulation based on smoking and health. The economic costs cited by the City Council are secondary; they only occur because of the ill effects of smoking on City residents' health. In the realm of cigarette advertising, Congress now regulates the balance between the need to warn the public of known health risks and the interests of the tobacco industry in advertising cigarettes. Defendants' statement that the Local Law "is directed at countering the potential of cigarette advertising to mislead the public as to its harmful effects," (Defs. Reply Mem. & Mem. in Opp., at 9), undermines their argument. In selecting the anti-smoking messages, the Department of Health is directed to "select ... those public health messages which it deems to communicate most effectively the health risks of tobacco product use or the health benefits of not using tobacco products." N.Y. City Admin. Code § 17–621e(1). Clearly, the Local Law impermissibly "operate[s] upon the same object" (cigarette advertising) as the Federal Act notwithstanding the City's effort to characterize its purpose as one of economic regulation. *Gade v. National Solid Wastes Management Ass'n,* —— U.S. ——, 112 S.Ct. 2374, 2387, 120 L.Ed.2d 73 (1992) (citing *Napier v. Atlantic Coast Line Ry. Co.,* 272 U.S. 605, 612, 47 S.Ct. 207, 209, 71 L.Ed. 432 (1926)); *Perez v. Campbell,* 402 U.S. 637, 651–52, 91 S.Ct. 1704, 1711–12, 29 L.Ed.2d 233 (1971) ("[A]ny state legislation which frustrates the full effectiveness of federal law is rendered invalid by the Supremacy Clause.") (quoted in *Gade,* —— U.S. at ——, 112 S.Ct. at 2387).

Defendants' lengthy quotation from *Cipollone* does not further their argument. In holding claims based upon fraudulent misrepresentation not preempted, the plurality found that the general duty not to make fraudulent statements was not encompassed in the phrase "based on smoking and health" when "fairly but narrowly construed." *Cipollone,* —— U.S. at ——, 112 S.Ct. at 2624. Clearly, that case did not involve a positive local enactment with any articulated relationship to smoking.[15] There is no need to construe the phrase "based on smoking and health" overly broadly in order to encompass the Local Law; the Local Law's terms clearly bring it within even a narrow reading.[16]

---

**15.** Justice Scalia, who believed that all of the asserted common law claims were preempted, suggests a " 'proximate application' methodology for determining whether [the claims] invoke duties 'based on smoking and health' ... [that is] whether, whatever the source of the duty, it imposes an obligation ... because of the effect of smoking upon health." *Id.* at ——, 112 S.Ct. at 2637. While his test may be overly broad, in a case where the preemption provision's other criteria are present, it may be a useful tool. In this case, the duties under the Local Law are imposed "because of the effect of smoking upon health."

**16.** The Senate Report accompanying the 1969 Federal Act summarizes the preemption provision: "[It] [p]rohibits health-related regulation or prohibition of cigarette advertising by any State or local authority." S.Rep. No. 91–566, 91st Cong.2d Sess., *reprinted in* 1970 U.S.C.C.A.N. 2652, 2652. In discussing each amendment in more detail, the Senate Committee stated:

> The State preemption of regulation or prohibition with respect to cigarette advertising is narrowly phrased to preempt only State action based on smoking and health. It would in no way affect the power of any State or political subdivision of any state with respect to the taxation or the sale of cigarettes to minors, or the prohibition of smoking in public buildings, or similar police regulations. It is limited entirely to State or local requirements or prohibitions in the advertising of cigarettes.

*Id.* at 2663. The Local Law is clearly not a police regulation of the nature envisioned in this

It is, of course, useful to consider the preemption provision in light of the purpose of the Federal Act and to adjudge whether the Local Law conflicts with it in light of that purpose. In its "declaration of policy and purpose," Congress stated:

It is the policy of the Congress, and the purpose of this chapter, to establish a comprehensive Federal program to deal with cigarette labeling and advertising with respect to any relationship between smoking and health, whereby—

(1) the public may be adequately informed that cigarette smoking may be hazardous to health by inclusion of a warning to that effect on each package of cigarettes; and

(2) commerce and the national economy may be (A) protected to the maximum extent consistent with this declared policy and (B) not impeded by diverse, nonuniform, and confusing cigarette labeling and advertising regulations with respect to any relationship between smoking and health.

15 U.S.C. § 1331 (1970) [17]. The second subsection of this provision in combination with the preemption provision itself makes clear that Congress had in mind avoiding precisely the type of anti-smoking message requirement now before this Court. The Local Law creates a regulation directly related to advertising that is "diverse, nonuniform and confusing" *vis a vis* the federal legislation.[18]

\* \* \*

For the foregoing reasons, the Court determines that the Local Law as applied to privately owned taxicabs for whose advertising space the City issues permits is preempted by the Federal Act. Since Plaintiff is entitled to the relief it seeks on the ground of preemption, the other grounds urged by Plaintiff need not be addressed. As to the Local Law's application to property owned, operated or leased by the City, the Court expresses no opinion. Plaintiff's motion for summary judgment is granted. The City's motion to dismiss is denied as moot. Plaintiff may have final judgment enjoining Defendants from enforcing Local Law No. 83 against Plaintiff Vango.

SO ORDERED.

---

discussion of the limits to the preemption clause's coverage. *Cf. People v. Cook*, 34 N.Y.2d 100, 356 N.Y.S.2d 259, 268 n. 7, 312 N.E.2d 452, 461 n. 7 (1974) (tax on cigarettes based on amount of tar and nicotine and which required posting price differentials in, *inter alia*, advertisements not preempted because primarily an economic regulation under local taxing power); *Long Island Tobacco Co. v. Lindsay*, 74 Misc.2d 455, 343 N.Y.S.2d 759, 764 (N.Y.Sup.Ct.N.Y. County 1973), *aff'd*, 42 A.D.2d 1056, 348 N.Y.S.2d 122 (App.Div. 1st Dep't), *aff'd*, 34 N.Y.2d 748, 357 N.Y.S.2d 504, 313 N.E.2d 794 (1974) (also finding local taxing authority sufficient to avoid preemption).

**17.** Section 1331(1) was reenacted unchanged in the 1969 Federal Act. It was amended on October 12, 1984 as Pub.L. 98–474, § 6(a), 98 Stat. 2204 to read:

(1) the public may be adequately informed about any adverse health effects of cigarette smoking by inclusion of warning notices on each package of cigarettes and in each advertisement of cigarettes; and 15 U.S.C. § 1331(1) (1988).

**18.** The Local Law is an example of a local government taking into its own hands that which Congress previously determined to regulate itself. The fact that the Local Law is not aimed at the content of cigarette advertisements, but rather is triggered by the placement of cigarette advertisements, does not lessen the Local Law's tendency to impede cigarette advertising. It is for Congress, and not a local government, to determine to what extent the messages reaching the public through print advertising should be changed, impeded or contravened for health reasons. Obviously, the City Council's effort was motivated by startling statistics, incorporated in the City Council's declaration, suggesting the need to counter the effect, especially upon young people, of the images of health and well-being used in cigarette advertisements. However, the Council may not infringe upon Congress' clear intention to prohibit competing local regulatory schemes.