**VANGO MEDIA, INC., Plaintiff–Appellee,**

v.

**The CITY OF NEW YORK; The New York City Department of Health; and The New York City Taxi and Limousine Commission, Defendants–Appellants.**

**No. 790, Docket 93–7607.**

United States Court of Appeals, Second Circuit.

Argued Dec. 10, 1993.

Decided Aug. 26, 1994.

---

Elizabeth S. Natrella, New York City (Leonard J. Koerner, Pamela Seider Dolgow, Lisa S.J. Yee, O. Peter Sherwood, Corp. Counsel of the City of New York, of counsel), for defendants-appellants.

Nicholas E. Poser, New York City (Michael Krinsky, Rabinowitz, Boudin, Standard, Krinsky & Lieberman, P.C., of counsel), for plaintiff-appellee.

Arthur N. Eisenberg, New York City, submitted a brief on behalf of the New York Civil Liberties Union Foundation, as amicus curiae.

Melvin L. Wulf, New York City (Abner S. Greene, Beldock Levine & Hoffman, of counsel), submitted a brief on behalf of Albert Einstein Cancer Center/Montefiore Hosp. Alliance for Smoke–Free Air, American Cancer Soc., NYC Div., American Cancer Soc., Queens Div., American Council on Science and Health, American Heart Ass'n, New York City Affiliate, American Lung Ass'n of

New York State, American Lung Ass'n of Queens, Bedford–Stuyvesant Healthy Heart Program, Cancer Prevention Research Institute, Health Watch Information & Promotion Service, New Jersey Group Against Smoking Pollution, New York County Medical Soc., New York Lung Ass'n, Smokefree Educational Services, St. Luke's Roosevelt Hosp. Center, Stop Teenage Addiction To Tobacco, Tri–State Coalition for Responsible Inv., Washington Heights–Inwood Healthy Heart, Women's Medical Ass'n of New York, as amicus curiae.

Before: NEWMAN, Chief Judge, OAKES and CARDAMONE, Circuit Judges.

CARDAMONE, Circuit Judge:

On this appeal we must decide whether federal law preempts a New York City ordinance. The ordinance was enacted for the laudable purpose of calling the public's attention, through the medium of advertising, to the health dangers of smoking. However praiseworthy such purpose, it may not be accomplished by means that are in derogation of a federal statute that, in an effort to avoid the chaos of multiple diverse regulations, bars States and their political subdivisions from enacting advertising regulations respecting the relationship between smoking and health. The ends may not justify the means when the means are unlawful. Defendants, the City of New York, *et al.*, appeal from a judgment entered July 1, 1993 in the Southern District of New York (McKenna, J.) granting plaintiff Vango Media, Inc.'s motion for summary judgment in its action seeking a declaration that federal law preempts the local ordinance. We affirm.

## BACKGROUND

Vango Media, Inc. (Vango) is a New York company in the business of displaying advertising signs on the exterior of New York City taxicabs. It contracts with taxicab companies for the right to install and maintain its own advertising frames on the top of the taxis. In February 1993 Vango brought the instant action against the City of New York, the New York City Department of Health and the New York City Taxi and Limousine Commission (collectively, the City) challenging Local Law No. 83 of 1992, the "Tobacco Product Regulation Act," codified as Title 17, Chapter 7 of the New York City Administrative Code, §§ 17–616 to 17–626 (Local Law).

The challenged portion of the Local Law requires a minimum of one public health message—defined by § 17–617 j as pertaining to the health dangers of smoking or the health benefits of not smoking—to be displayed for every four tobacco advertisements displayed on certain property and facilities licensed by the City of New York. Twenty-five percent of the messages must be "directed to the youth population" of New York. *See id.* § 17–621 a(1). Advertising space on taxis, for which the Taxi and Limousine Commission issues one-year permits at a cost of $50 per cab to Vango and other companies in the same business pursuant to New York City Admin. Code § 19–525, is subject to the requirements of the Local Law. *See id.* § 17–617 u(ii).

Under the terms of the Local Law, interested individuals, groups or entities are invited to submit proposed health messages that are then screened by the Department of Health, which selects those "it deems to communicate most effectively the health risks of tobacco product use or the health benefits of not using tobacco products." *See id.* §§ 17–621 c, –621 e(1). The Taxi and Limousine Commission reviews the messages to ensure that they conform with the Commission's standards of form, appearance, and appropriateness. Several messages are then submitted to the permit holder for display. *See id.* § 17–621 e(2). The Local Law requires, in addition, that the permit holder keep daily records and submit a quarterly report to the Commission reflecting the number and locations of its tobacco advertisements and the public health messages. *See id.* § 17–621 b(1). The cost of displaying such messages is imposed on the permit holder, *see id.* § 17–621 d, and the public health messages must be displayed employing the same methods and materials used for tobacco advertisements, *see id.* § 17–621 a(2).

Vango currently displays advertisements on approximately 1,600 taxicabs pursuant to contracts with four taxicab companies. It

purchases a commensurate number of permits from the Taxi and Limousine Commission at a total cost of $80,000 per year. Vango avers that 82 percent of its current paid advertisements are for cigarettes, and that historically 75 percent of its advertising revenue has come from cigarette advertisers. Its contract with the Leo Burnett U.S.A. agency of Chicago, Illinois, representing the advertisers, is set forth in the record.

On March 24, 1993 Vango moved for partial summary judgment on three of the causes of action alleged in its complaint, which sought declaratory and injunctive relief against the City. In support of its motion, Vango made the following arguments. First, the Local Law as applied to permit holders is preempted by the Federal Cigarette Labeling and Advertising Act of 1965, Pub.L. No. 89–92, 79 Stat. 282, as amended by the Public Health Cigarette Smoking Act of 1969, Pub.L. No. 91–222, 84 Stat. 87 (codified, as amended, at 15 U.S.C. §§ 1331–1340 (1988)) (Act). Second, the Local Law violates Vango's First Amendment rights because the law requires it to pay for and display messages written by third parties and selected by officials employed by the City. Third, under its current contract, Vango qualifies for an exemption from the Local Law. No challenge to the application of the Local Law to property owned or operated by the City was made.

The next day, March 25, the City moved to dismiss Vango's complaint for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6). The district court granted plaintiff's motion in a published opinion. *See* 829 F.Supp. 572 (S.D.N.Y.1993). It concluded that the Local Law as it applied to privately-owned taxicabs for whose advertising space the City issues permits, was preempted by the Act, and enjoined the City from enforcing the Local Law solely as against Vango and those similarly situated. As a result of this legal conclusion, the trial court did not reach or address Vango's other arguments. The City's motion to dismiss Vango's complaint was denied as moot. *See id.* at 583. From the July 1, 1993 judgment entered in accordance with the foregoing, the City appeals.

## DISCUSSION

### I  Preemption

Notwithstanding the patent First Amendment problems with the Local Law, the sole question to be addressed is whether § 1334(b) of the Act preempts the Local Law as applied to Vango and those similarly situated. We address the Local Law only as it applies to advertising space on privately-owned property because no challenge has been made to the Local Law in its application to property owned or operated by the City.

### A.  *In General*

In *The Federalist*, Alexander Hamilton sets forth how political power is to be divided in a Republic. He states that the laws of the larger political entity—into which smaller political societies agree to join—are to be the *supreme law* of the land. Were it otherwise, Hamilton continues, the agreement would be merely a treaty dependent on the good faith of the parties, and not a government. As a corollary, the acts of the larger society or the government must be pursuant to its constitutional powers, because if not, he concludes, such acts, which would invade the residuary authority of the smaller societies, would constitute a usurpation of power. *The Federalist No. 33*, at 204 (Alexander Hamilton) (Clinton Rossiter ed., 1961). Beginning with *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 424, 4 L.Ed. 579 (1819) (Marshall, Ch.J.), federal courts have attempted to comply with the spirit of Hamilton's view.

The Supremacy Clause states: "This Constitution, and the Laws of the United States ... made in Pursuance thereof; ... shall be the supreme Law of the Land; ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art VI, cl. 2. Under the doctrine of preemption, which gives force to the Supremacy Clause, it is held that, " 'any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield.' " *Felder v. Casey*, 487 U.S. 131, 138, 108 S.Ct. 2302, 2306, 101 L.Ed.2d 123 (1988) (quoting *Free v. Bland*, 369 U.S. 663, 666, 82 S.Ct. 1089, 1092, 8 L.Ed.2d 180 (1962)).

Federal law may preempt state law explicitly, by stating that fact in the statute; impliedly, where the comprehensiveness of federal legislation in a given field leaves no room for a state to act; and where state law actually conflicts with federal law so that compliance with both is impossible. *See, e.g., Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n,* 461 U.S. 190, 203–04, 103 S.Ct. 1713, 1721–22, 75 L.Ed.2d 752 (1983). Whether preemption under the Supremacy Clause be explicit, or implied under field preemption, or under conflict preemption, consideration of that issue must begin with the assumption—reflecting Hamilton's thesis—that the historic police powers of the State are not preempted by federal law " 'unless that [is] the clear and manifest purpose of Congress.' " *See Cipollone v. Liggett Group, Inc.,* —— U.S. ——, ——, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992) (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)).

### B. *In this Case*

With these precepts in hand, we turn to the preemption issue in this case. Section 1334 of the Act entitled "Preemption" in subdivision (b) entitled "State regulations" provides: "No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter." The Supreme Court recently addressed the effect of this provision in *Cipollone,* a case that considered whether certain civil damage actions were preempted by § 1334(b). In a splintered decision that produced three separate opinions, representing differing views on the scope of § 1334(b) in relation to the facts of that case, a plurality ultimately held that § 1334(b) barred state common law failure to warn claims, but did not preempt breach of express warranty, fraudulent misrepresentation, and conspiracy to defraud causes of action under state law. *See Cipollone,* —— U.S. at ——, 112 S.Ct. at 2625. A majority nonetheless agreed on certain core principles pertinent to the disposition of the case at hand.

Most important, seven members of the Court concluded that "the pre-emptive scope of the ... Act is governed entirely by the express language in § [1334(b)]" because Congress "considered the issue of pre-emption and [ ] included in the enacted legislation a provision explicitly addressing that issue, and ... that provision provides a 'reliable indicium of congressional intent with respect to state authority.' " *Cipollone,* —— U.S. at ——, 112 S.Ct. at 2618 (quoting *Malone v. White Motor Corp.,* 435 U.S. 497, 505, 98 S.Ct. 1185, 1190, 55 L.Ed.2d 443 (1978)). They also opined that " 'there is no need to infer congressional intent to pre-empt state laws from the substantive provisions' of the legislation" because "Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted." *Id.* (quoting *California Fed. Sav. & Loan Ass'n v. Guerra,* 479 U.S. 272, 282, 107 S.Ct. 683, 690, 93 L.Ed.2d 613 (1987)).

As a result of these clear guides, our task on this appeal is relatively straightforward. We need only determine whether the Local Law is within the domain expressly preempted, in other words, does the Local Law impose a "requirement or prohibition based on smoking and health ... with respect to the advertising or promotion of any cigarettes." 15 U.S.C. § 1334(b). To answer that question, we break down § 1334(b) into its three essential phrases, analyzing the local ordinance's relationship to each part of § 1334(b) in turn.

### II   Analysis of 15 U.S.C. § 1334(b)

### A. *Requirement or Prohibition*

The first phrase, "no requirement or prohibition," is one that the *Cipollone* Court unanimously agreed covered "positive enactments" of political subdivisions, for example, statutes and regulations. *See* —— U.S. at ——, 112 S.Ct. at 2619–20 (plurality opinion), —— U.S. at ——, 112 S.Ct. at 2627 (Blackmun, J., concurring in part, dissenting in part), —— U.S. at ——, 112 S.Ct. at 2634 (Scalia, J., concurring in part, dissenting in part). The instant Local Law plainly is a "requirement" stated in the form of a positive enactment by the City. Unless advertisers like Vango are willing to forgo displaying

tobacco advertising, they must display anti-smoking messages as well as the advertisers' sales messages.

## B. *Based On Smoking and Health*

The second phrase is "based on smoking and health." The City insists the Local Law was enacted in light of the economic costs related to smoking, and not on smoking and health considerations. For support, it cites a portion of the Local Law's declaration of legislative findings and intent. In the fourth paragraph, the declaration reads: "Besides the grave dangers posed by tobacco use to the health of New York City residents of all ages, the Council also finds that tobacco use threatens the general welfare of all New Yorkers by causing enormous financial costs to the taxpayers, in the form of health care benefits, and a loss of productivity among the city's workforce."

In *Gade v. National Solid Wastes Management Association*, —— U.S. ——, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992), the Supreme Court held that the federal Occupational Safety and Health Act of 1970, preempted an Illinois law providing for training, testing, and licensing of hazardous waste site workers. Illinois asserted its law was not preempted because the state legislature's purpose in passing the law was to address public safety in addition to occupational safety. *See id.* at ——, 112 S.Ct. at 2386. In rejecting Illinois' argument, the Court explained that the question of preemption is defined, in part, by the purpose of the state law, and, in part, by the state law's actual effect. *Id.* at ——, 112 S.Ct. at 2386–87. Both must be considered in answering the question whether state regulation in a given field so interferes with federal regulation as to be deemed preempted by the federal statute. *Id.*

Reading the entire declaration of legislative findings and intent clarifies the secondary role of the City's economic motivations compared to its health concerns. Similarly, the effect of the Local Law would be to educate the public as to the adverse health risks of smoking. The first two paragraphs of the declaration chronicle the health risks associated with smoking and in particular the problem of smoking by minors. It is a truism that almost all matters touching on matters of public concern have an associated economic impact on society. But such economic concern does not displace a local government's primary interest—whether it be public safety, the common good, or in this case public health.

## C. *With Respect to the Advertising or Promotion of any Cigarettes*

Having concluded that the Local Law is a "requirement … based on smoking and health," we pass to the third phrase—" with respect to the advertising or promotion of any cigarettes." 15 U.S.C. § 1334(b). This portion of the City's ordinance is the most contentious.

The City asserts its municipal ordinance imposes no requirements or prohibitions on the content, format or display of cigarette advertisements and therefore is beyond the scope of § 1334(b). It asserts that the Local Law does nothing to hamper the advertising or promotion of cigarettes, which § 1334(b) prohibits. Vango predictably responds that because the placement of tobacco advertisements triggers the applicability of the Local Law, it is obviously "with respect to the advertising or promotion" of cigarettes. The district court ruled that because the Local Law conditions the propriety of displaying cigarette advertisements on their compliance with the Local Law, it falls within the scope of § 1334(b). *See* 829 F.Supp. at 580.

Our task is to delineate the scope of § 1334(b). In so doing, we rely on an express preemption analysis in which focus remains on the language Congress used in § 1334(b). *See Greenwood Trust Co. v. Massachusetts*, 971 F.2d 818, 824 (1st Cir.1992) ("[s]o long as Congress's intent to effect preemption remains clear and manifest, uncertainty which pertains only to the contours of the ensuing preemption does not necessitate an alteration of a reviewing court's basic analytic approach"), *cert. denied*, —— U.S. ——, 113 S.Ct. 974, 122 L.Ed.2d 129 (1993). Thus, as the district court did, we analyze the words "with respect to."

The plurality in *Cipollone* noted the scope of § 1334(b) was broadened by the inclusion of the "with respect to" language in the 1969 Amendments to the Act. *See* —— U.S. at ——, 112 S.Ct. at 2619. Previously, § 1334(b) read as follows:

No statement relating to smoking and health shall be required in the advertising of any cigarettes the packages of which are labeled in conformity with the provisions of this Act.

Pub.L. 89–92, 79 Stat. 283, 15 U.S.C. § 1334(b) (1964 & Supp. I 1965).

In its analysis, the district court defined the relevant usage of the noun "respect" as "'a relation to or concern with something usually specified.'" 829 F.Supp. at 581 (quoting *Webster's Third New International Dictionary* (1986)). The Supreme Court has frequently given broad effect to the term "relating to." *See, e.g., District of Columbia v. Greater Wash. Bd. of Trade,* —— U.S. ——, ——, 113 S.Ct. 580, 583, 121 L.Ed.2d 513 (1992) (defining "relate to" as "refer[ing] to or ha[ving] a connection with"); *Morales v. Trans World Airlines, Inc.,* —— U.S. ——, ——, 112 S.Ct. 2031, 2037, 119 L.Ed.2d 157 (1992) (words "relating to" "express a broad pre-emptive purpose"); *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 138, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990) (the key to expansiveness in preemption clause was found in the words "relate to"); *see also Black's Law Dictionary* 1288 (6th ed. 1990) (defining "relate to" broadly).

■ When construing a statute, the plain meaning of the words Congress chose must be given effect, unless there is some good reason to suppose the legislature intended those words to have a more restrictive meaning. *See Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). Four Justices in *Cipollone* found no such restrictive meaning, concluding there was no reason to believe Congress meant less than what it said and, that in amending the Act, it meant precisely what it said. —— U.S. at ——, 112 S.Ct. at 2620. Justice Scalia, joined by Justice Thomas, implicitly agreed with this broad reading, as in his view § 1334(b) preempted all of Cipollone's common law claims because they imposed an obligation due to "the effect of smoking upon health." *Id.* at ——, 112 S.Ct. at 2637.

We see no indication that Congress planned to permit laws like the instant Local Law to exist side by side with § 1334(b). The Act's statement of purpose makes that point when it "expressed an intent to avoid 'diverse, nonuniform,. and confusing labeling and advertising regulations with respect to any relationship between smoking and health.'" *Cipollone,* —— U.S. at ——, 112 S.Ct. at 2619; *see also* S.Rep. No. 566, 91st Cong., 2d Sess. (1970), *reprinted in* 1970 U.S.C.C.A.N. 2652, 2652 (the bill "[p]rohibits health-related regulation or prohibition of cigarette advertising by any State or local authority"). In requiring permit holders who display cigarette advertising also to display anti-smoking messages, the Local Law treads on the area of tobacco advertising, even if it does so only at the edges. As a result, it implicates § 1334(b).

It must be acknowledged that the actual cigarette advertisements would not look different were we to permit the City to impose the mandated public health messages. Nonetheless, advertisers and promoters like Vango would be substantially impacted by the Local Law's requirements. Perhaps were § 1334(b)'s 1965 provisions still in effect, we might be persuaded by the proposition advanced by the City that Congress only meant to preempt state and local laws that change the actual look of cigarette advertisements. But, the more expansive reach of § 1334(b), as clearly evidenced by its amended language, precludes that result.

We are also mindful of the City's point that the Local Law is not aimed at advertising or promotion, but is geared rather towards informing the City's youth of the dangers of cigarettes. But contrary to the suggestions of the City, the Local Law as it affects Vango is not similar to laws restricting the sale of cigarettes to minors, or prohibiting smoking in public places. Congress never planned that the traditional exercise of state police power in those areas be displaced; state power to regulate on those topics is left intact. *See* S.Rep. No. 566, *reprinted in* 1970 U.S.C.C.A.N. at 2663 (§ 1334(b) "would in no way affect the power of any State or political subdivision of any State with respect to the taxation or the sale of cigarettes to minors, or the prohibition of smoking in public buildings, or similar police regulations").

Moreover, the plain language of § 1334(b), supported by its legislative history, draws a clear line of demarcation between those activities over which federal law will govern

and those remaining with the states. *Cf. Pacific Gas & Elec. Co.*, 461 U.S. at 210, 103 S.Ct. at 1725. While sales restrictions and smoking prohibitions have little in common with advertising or promotion, the Local Law directly impacts advertisers and promoters because it imposes conditions on their display of cigarette advertisements. As the Senate Commerce Committee noted, § 1334(b) was included "[i]n order to avoid the chaos created by a multiplicity of conflicting regulations." S.Rep. No. 566, *reprinted in* 1970 U.S.C.C.A.N. at 2663.

## CONCLUSION

Consequently, notwithstanding the widespread recognition of the dangers of smoking and the benefits of curbing cigarette smoking by minors, the City's methods in approaching these problems conflict with the provisions of § 1334(b).

The judgment of the district court is accordingly affirmed.