06-4149-cv
Pacific Capital Bank, N.A. v. State of Connecticut

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

- - - - - -

August Term, 2007

(Argued: December 4, 2007          Decided: September 12, 2008)

Docket No. 06-4149-cv

_____

PACIFIC CAPITAL BANK, N.A.,

Plaintiff-Appellee,

- v. -

STATE OF CONNECTICUT,

Defendant,

RICHARD BLUMENTHAL, in his official capacity as
Attorney General of the State of Connecticut, and JOHN
P. BURKE, in his official capacity as Banking
Commissioner of the State of Connecticut,

Defendants-Appellants.

_____

Before: KEARSE, STRAUB, and HALL, Circuit Judges.

Appeal from a judgment of the United States District Court for the District of Connecticut, Peter C. Dorsey, Judge, declaring that, in order to avoid preemption by the National Bank Act, 12 U.S.C. § 21 et seq., certain provisions of a Connecticut statute regulating tax refund anticipation loans, see Conn. Gen. Stat. § 42-480, are construed as not applying to national banks or to tax-return services assisting national banks with such loans.

Affirmed.

STEPHEN M. RYAN, Washington, D.C. (James E. Datri, McDermott, Will & Emery, Washington, D.C., Tamar Feder, Benjamin G. Shatz, Manatt, Phelps & Phillips, Washington, D.C., on the brief), for Plaintiff-Appellee.

CLARE E. KINDALL, Assistant Attorney General, Hartford, Connecticut (Richard Blumenthal, Attorney General, Jane R. Rosenberg, Mark F. Kohler, Assistant Attorneys General, Hartford, Connecticut, on the brief), for Defendants-Appellants.

Arnold & Porter (Laurence J. Hutt, Los Angeles, California, Howard N. Cayne, Nancy L. Perkins, Washington, D.C., of counsel) filed a brief for amici curiae American Bankers Association, America's Community Bankers, Consumer Bankers Association, and Financial Services Roundtable, in support of Plaintiff-Appellee.

University of Connecticut School of Law Tax Clinic, Hartford, Connecticut (Diana L. Leyden, Maurice Headley, Aaron Shotland, Sara Yoon, Hartford, Connecticut, of counsel), filed a brief as amicus curiae in support of Defendants-Appellants.

Chi Chi Wu, National Consumer Law Center, Boston, Massachusetts, Kathleen Keest, Center for Responsible Lending, Durham, North Carolina, Gail Hillebrand, Consumers Union, San Francisco, California, Ira Rheingold, National Association of Consumer Advocates, Washington, D.C., and Deepak Gupta and Brian Wolfman, Public Citizen Litigation Group, Washington, D.C., filed a brief for amici curiae National Consumer Law Center, Consumer Federation of America, Center for Responsible Lending, Consumers Union, National Association of Consumer Advocates, Connecticut Public Interest Research Group, U.S. PIRG, Consumer Action, Public Citizen, and National Association of Consumer Agency Administrators, in support of Defendants-Appellants.

KEARSE, Circuit Judge:

Defendants Richard Blumenthal and John P. Burke, in their respective capacities as Attorney General and Banking Commissioner of the State of Connecticut (collectively "the State Officials") appeal from so much of a judgment of the United States District Court for the District of Connecticut, Peter C. Dorsey, Judge, as granted summary judgment in favor of plaintiff Pacific Capital Bank, N.A. ("Pacific"), against the State Officials (1) declaring that Conn. Gen. Stat. § 42-480, which regulates the granting of loans made in anticipation of income tax refunds ("refund anticipation loans"), would, as written, limit the ability of national banks to offer such loans and limit the rates they may charge, and would thereby conflict with and be preempted by provisions of the National Bank Act (or "NBA"), 12 U.S.C. § 21 et seq.; and (2) construing the pertinent subsections of § 42-480 in such a way as to avoid the conflict. On appeal, the State Officials argue principally that Pacific lacked standing to challenge § 42-480 and that, in any event, the district court's preemption ruling is erroneous because § 42-480 does not apply to national banks and the NBA should not be construed to preempt that statute because the statute regulates only non-bank entities. For the reasons that follow, we reject appellants' contentions and affirm the judgment of the district court.

- 3 -

## I.  BACKGROUND

The material facts are not in dispute and are summarized as follows.

A. Refund Anticipation Loans

A refund anticipation loan (or "RAL") is a loan that is made to a taxpayer at or about the time of filing his or her income tax return and that is expected to be repaid to the lender directly from the proceeds of the borrower's anticipated tax refund.  Generally, the borrower receives cash or a check in the amount of the refund, minus the bank's loan fees and a fee charged by an independent entity that prepares the loan application.

Pacific is a national bank whose main office and principal place of business are in California; it has no branches in Connecticut.  As a national bank, its lending and lending-related practices are governed by the National Bank Act and regulations promulgated thereunder by the Office of the Comptroller of the Currency.  The NBA permits a national bank, on loans it makes in any state, to charge interest at the rates allowed by its home state, even if those rates would be prohibited by another state.  See 12 U.S.C. § 85.  California, Pacific's home state, places no limit on interest rates.

Pacific has offered RALs in the State of Connecticut (or the "State") since 1992, using the services of third-party tax-return-preparation businesses.  During the 2004 income tax season,

Pacific issued 8,313 RALs in Connecticut; of these, 6,527 were facilitated by Jackson Hewitt, a firm whose services include the preparation of tax returns, and the remainder were facilitated by other tax-return preparers, many of which were small businesses. Under Pacific's procedure for issuing RALs, the taxpayer-borrower completes a loan application provided by his or her tax-return preparer; the tax-return preparer forwards the application to Pacific. Pacific alone decides whether or not to issue the loan. If Pacific decides to issue the RAL, it disburses to the borrower--by check, direct deposit, payroll card, or cash card--the expected amount of his or her anticipated tax refund, minus a fee, part of which may be retained by the tax-return preparer. Often the taxpayer receives the loan proceeds within 24 hours. The taxpayer authorizes the IRS to make a direct deposit of the refund into a temporary bank account established by Pacific, enabling Pacific to be repaid when the refund is deposited.

Pacific does not charge RAL borrowers any fees other than interest on the RAL. The interest Pacific charges is established by nationwide contracts with tax-return-preparation businesses. The average fee charged by Pacific for a $3,000 RAL is $100. Pacific states that, if calculated on an annualized basis as a fee for a loan period of 11 days, this $100 fee amounts to a 115 percent rate of interest, even though the borrower pays only a total finance charge of 3.3 percent of the loan amount.

B. Connecticut General Statute § 42-480

Section 42-480, as amended by the Connecticut General Assembly in 2005, regulates refund anticipation loans. See An Act Protecting Consumers in the Making of Income Tax Refund Anticipation Loans, 2005 Conn. Pub. Acts No. 05-107 ("RAL Act"). It defines an RAL "facilitator" generally as

> a person who, individually, or in conjunction or cooperation with another person, makes a refund anticipation loan, processes, receives or accepts for delivery an application for a refund anticipation loan, issues a check in payment of refund anticipation loan proceeds, or in any other manner acts to allow the making of a refund anticipation loan,

Conn. Gen. Stat. § 42-480(a)(2) (emphases added), but states that the term "facilitator"

> does not include a bank, savings and loan association, credit union or person issued a license under the provisions of sections 36a-555 to 36a-573, inclusive, operating under the laws of the United States or this state, or any person who acts solely as an intermediary and does not deal with the public in the making of a refund anticipation loan,

id. (emphases added). Subsection (b) of § 42-480 requires that when a prospective borrower applies for an RAL, the facilitator must make disclosures as to, inter alia, the estimated fee for preparing and filing the tax return, the RAL fee schedule, and the percentage rate of the RAL fee on an annualized basis. The statute also provides as follows:

> (c) No refund anticipation loan shall be made at any location other than a location in which the principal business is tax preparation.

> (d) The interest rate for a refund anticipation loan shall not exceed (1) sixty per cent per annum for the initial twenty-one days of such loan, and (2)

twenty per cent per annum for the period commencing on the twenty-second day of such loan and ending on the date of payment.

Conn. Gen. Stat. §§ 42-480(c) and (d). Subsection (e) provides that "[a]ny facilitator who violates any provision of this section" is subject to a $500 fine and to liability for three times the RAL fee in a civil suit brought by the aggrieved borrower or by the State Attorney General on behalf of such a borrower. Id. § 42-480(e).

Following enactment of the 2005 amendments to § 42-480 by the RAL Act, Connecticut Attorney General Blumenthal issued an official opinion as to the scope of the statute, in response to a question from a State legislator as to "whether the Act's provisions can be enforced against national banks." (Op. Conn. Att'y Gen. No. 05-029 (Oct. 24, 2005) ("Conn. Att'y Gen. Op."), at 2.) The opinion stated that "the protections against abusive lending practices embodied within the Act are fully enforceable against 'facilitators' of refund anticipation loans regardless of the source of the loan financing and are not preempted by federal law." (Id. at 1.) It "conclude[d] that the Act, by its own terms, does not apply to national banks, but that the Act is enforceable against facilitators of refund anticipation loans made by national banks." (Id. at 2.)

C. The Present Action and the Decision of the District Court

Pacific commenced the present action in 2006, challenging the constitutionality of § 42-480 under the Supremacy Clause of

- 7 -

the Constitution, alleging that § 42-480 impaired Pacific's ability to undertake lending and lending-related activities that are authorized by the National Bank Act. Pacific asserted principally that § 42-480(d) placed a ceiling on RAL interest rates, whereas California law imposes no such ceiling, and thereby contravened the NBA provision allowing a national bank to charge, in any state, interest rates that are permitted by its home state. Pacific sought a declaratory judgment that § 42-480 is preempted by the NBA and an injunction against enforcement of § 42-480 against any entity--including tax-return preparers--in connection with the offering or making of RALs by Pacific.

Both sides shortly moved for summary judgment. To the extent pertinent to this appeal, the State Officials argued that the complaint should be dismissed on the grounds that Pacific lacked standing to bring this action because § 42-480 had not yet been enforced against Pacific and that, in any event, § 42-480 was not preempted by the National Bank Act because the section regulates only non-banks. Pacific sought summary judgment in its favor on the grounds that §§ 42-480(c) and (d), on their face, appear to apply to banks, and that subsection (d), even if not applied to banks, would indirectly regulate Pacific and other national banks by obstructing and impairing their ability to make RALs in Connecticut.

In a Ruling on Motions for Summary Judgment, dated August 10, 2006, reported at 2006 WL 2331075, the district court denied the motion to dismiss the complaint against the State Officials

and granted summary judgment in favor of Pacific on its preemption claim against those defendants. The court ruled that Pacific had standing to bring the present action, finding that its "complaints are neither hypothetical nor academic." 2006 WL 2331075, at *5. The court noted that "[a]lthough § 42-480 is a relatively recent statute and Defendants have not tried to enforce it against Plaintiff to date," id., Pacific's interpretation of the statute as applying to national banks was not unreasonable, given that subsection (d) "by its exact wording" limits permissible interest rates on RALs "with no apparent exception for national banks," id. at *4 & n.4. It noted that Pacific had "changed its business practice to avoid violating the law," id. at *5, by "currently offer[ing] RALs at little to no profit in Connecticut to comply with § 42-480," id. at *4, and that Pacific stated it might "be forced to discontinue offering RALs in Connecticut entirely," id. The court concluded that Pacific had thus shown injury-in-fact sufficient to give it standing to challenge § 42-480. Id. at *5.

As to the merits of Pacific's claim that § 42-480 conflicts with the National Bank Act and hence is preempted by it, the district court found that there was clearly conflict between the NBA and both subsection (c) and subsection (d) of § 42-480 as written. "The term 'facilitator' specifically excludes national banks and is used to limit the application of subsections (b) and (e), but not subsections (c) and (d)." 2006 WL 2331075, at *3 (emphasis in original). Subsection (c), which provides that RALs

may be made only at "a location in which the principal business is tax preparation," Conn. Gen. Stat. § 42-480(c),

> on its face, is not limited to facilitators. Under this subsection, a national bank that wanted to offer an RAL at one of its own branches would be prohibited from doing so. This is clearly a violation of NBA.

2006 WL 2331075, at *9 (emphasis in original).

As to § 42-480(d), which expressly limits the interest rates that may be charged on refund anticipation loans, the court found that "[t]here can be little argument that the text[] of subsection[] . . . (d), read in a vacuum, do[es] not specifically exclude national banks from this regulation." 2006 WL 2331075, at *6. It noted that the NBA, however,

> expressly permits national banks to charge interest rates at the rate allowed by the state where the bank is located, even if this rate is higher than the rate allowed by the state where the bank is lending. 12 U.S.C. § 85 (2005).

2006 WL 2331075, at *5. Thus, § 42-480(d) on its face would limit the interest rates that Pacific could charge, whereas the NBA allows Pacific to charge higher interest rates in accordance with the law of California, its home state. The court noted that "[w]hen state law conflicts with federal law, courts are bound to follow federal law. See U.S. Const. art. VI cl. 2. Therefore, a state law which regulates the interest rate that a national bank can charge on an RAL is preempted by federal law." 2006 WL 2331075, at *5.

In addition, the court concluded that even if subsection (d) were interpreted to apply only to facilitators, it would interfere with a national bank's NBA-authorized operations

- 10 -

indirectly. "The services of a tax preparer are clearly essential to the efficient operation of RALs," id. at *7, and

> [i]f facilitators were prohibited from involvement in making high-interest loans, then Jackson Hewitt would be prohibited from partnering with Plaintiff unless Plaintiff lowered its interest rates. This violates the NBA,

id. at *10.

Nonetheless, citing Jones v. United States, 529 U.S. 848, 857 (2000), the district court noted that when a statute is susceptible to more than one reading, the court should opt for an interpretation that avoids constitutional problems if such an interpretation is not contrary to the intent of the legislature. See 2006 WL 2331075, at *11. The court observed that while "[t]he language of subsections (c) and (d) . . . clearly purports to regulate national banks when read in isolation," other factors-- the exclusion of banks from the definition of facilitator, the statute's legislative history, its overall tone, and the State Attorney General's official opinion construing the statute-- "suggest that the Connecticut legislature was aware of its inability to directly regulate national banks and that it did not intend to do so." Id. at *6.

Accordingly, the district court construed § 42-480(c) as being limited to "facilitators" as that term is defined in subsection (a)(2). See id. at *9. The court also noted that one of the concerns leading to the inclusion of subsection (c) was that "RALs--and the tax returns that accompany them--were sometimes being prepared by people poorly situated to correctly

complete tax returns, such as car dealers and furniture salesmen." Id. at *2. The court concluded that in light of Pacific's own contentions that "the services of an experienced tax preparer are indispensable for the good faith and error free preparation of an RAL" and that "tax preparers are the favored and most efficient means of making RALs," id. at *9 (internal quotation marks omitted), "Connecticut's limitation of RAL facilitation to places where these preparation skills are available is a valid limitation," id.

As to subsection (d), which, even if read to apply only to facilitators, would significantly interfere with a national bank's RAL operations indirectly, see 2006 WL 2331075, at *10, the court concluded that an additional limitation should be inferred. It concluded that "the most reasonable interpretation of the statute," id., would be to construe § 42-480(d) both as not applying to national banks and as applying only to facilitators of RALs that are not partnering with national banks, see id. at *11-*12.

In sum, the court concluded that, to avoid § 42-480's preemption by the National Bank Act,

> [s]ubsection (c) must be construed to apply only to facilitators. If Plaintiff wanted to offer RALs at its own branches, it must be allowed to do so, even though Plaintiff's primary business is not tax preparation. Other than this limitation, subsection (c) remains in full force. Subsection (d) must be altered to allow national banks to (1) personally make RALs at the interest rate they desire, and (2) partner with facilitators in order to make RALs at the interest rates permitted by the NBA. Therefore, facilitators are prevented from "facilitating" the making of an RAL above the interest rate set in

subsection (d) <u>unless</u> they are doing so on behalf of a national bank.

2006 WL 2331075, at *12 (first two emphases ours; final two emphases in original). A declaratory judgment was entered accordingly.

D. Issues on This Appeal

On this appeal, the State Officials do not challenge the district court's interpretation of § 42-480(c) (the type-of-business location restriction) as not applying to national banks. They do not challenge the court's interpretation of § 42-480(d) (the ceiling-on-interest-rates restriction) as not applying to national banks. Nor do they contend that there is any genuine issue of material fact to be tried. Rather, the State Officials contend that the district court erred as a matter of law (1) in ruling that Pacific has standing to challenge § 42-480 at all, and (2) in ruling that the NBA can preempt a state statute that regulates only non-banks and interpreting subsection (d) as not applying to RAL facilitators that are assisting national banks.

Pacific, in addition to arguing that the district court's findings of conflicts between the National Bank Act and §§ 42-480(c) and (d) were correct and that the declared limitations of the scope of those subsections should be affirmed, argues that the district court erred in reinterpreting those subsections in order to avoid preemption of the entire section and "simply should have declared Section 42-480 preempted" (Pacific brief on appeal at 32). The latter argument is not properly

- 13 -

before us, given that it suggests that the district court's judgment should have been different, and given that Pacific did not file a cross-appeal. An appellee need not cross-appeal in order to advance any theory in support of the judgment that has a foundation in the record, regardless of the theory employed by the district court. See, e.g., Langnes v. Green, 282 U.S. 531, 538 (1931). But without cross-appealing, it may not advance a theory that challenges some aspect of the lower court's judgment. See, e.g., Greenlaw v. United States, 128 S. Ct. 2559 (2008); Langnes, 282 U.S. at 538-39 ("[A] party who does not appeal from a final decree of the trial court cannot be heard in opposition thereto when the case is brought here by the appeal of the adverse party. In other words, the appellee may not attack the decree with a view either to enlarging his own rights thereunder or [to] lessening the rights of his adversary, whether what he seeks is to correct an error or to supplement the decree with respect to a matter not dealt with below." (internal quotation marks omitted)); 20 Moore's Federal Practice § 304.11[3][b] (3d ed. 2007).

Accordingly, we address only the challenges to the judgment advanced by the State Officials. For the reasons that follow, we reject their contentions.

II. DISCUSSION

A. Standing

The State Officials contend that Pacific lacks Article III standing to challenge Conn. Gen. Stat. § 42-480 because the State has not, to date, initiated any action to enforce that statute against Pacific or any other national bank, or any other entity, and it is unknown how the State will apply that section in any future enforcement action. The State Officials also contend that Pacific's offering of refund anticipation loans in Connecticut at rates not exceeding the ceilings specified in § 42-480 is not fairly traceable to § 42-480 but is "purely [Pacific's] own choice," making any injury resulting from such lower rates "self-inflicted." (State Officials' brief on appeal at 21 (internal quotation marks omitted).) We disagree.

"[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 180-81 (2000). To show injury, "[a] plaintiff bringing a pre-enforcement facial challenge against a statute need not demonstrate to a certainty that it will be prosecuted under the statute . . . , but only that

- 15 -

it has 'an actual and well-founded fear that the law will be enforced against' it." <u>Vermont Right to Life Committee, Inc. v. Sorrell</u>, 221 F.3d 376, 382 (2d Cir. 2000) (quoting <u>Virginia v. American Booksellers Ass'n</u>, 484 U.S. 383, 393 (1988)). If a plaintiff's interpretation of a statute is "reasonable enough" and under that interpretation the plaintiff "may legitimately fear that it will face enforcement of the statute," then the plaintiff has standing to challenge the statute. <u>Vermont Right to Life Committee, Inc. v. Sorrell</u>, 221 F.3d at 383.

"A plaintiff does not lack standing simply by virtue of the indirectness of his or her injury . . . ." <u>Heldman v. Sobol</u>, 962 F.2d 148, 156 (2d Cir. 1992). A plaintiff may satisfy the causation requirement if the complaint "aver[s] the existence of [an] intermediate link between the state regulations and the injury." <u>Id</u>.

Given these principles, Pacific has standing substantially for the reasons articulated by the district court. First, in light of the language of § 42-480(d), which "by its exact wording" limits permissible interest rates on refund anticipation loans "with no apparent exception for national banks," 2006 WL 2331075, at *4 & n.4, Pacific reasonably interpreted that subsection's limitation as, on its face, applying to Pacific. The State Officials' suggestion that Pacific lacks standing on the theory that its reduction of its RAL interest rates in Connecticut below its nationwide standard to the levels permitted by § 42-480(d) in

the wake of that enactment was purely a matter of Pacific's choice, untraceable to § 42-480, is thus untenable.

Second, § 42-480 defines "facilitator" to include any non-bank entity that "receives or accepts for delivery an application for a refund anticipation loan," Conn. Gen. Stat. § 42-480(a)(2); and the State Officials apparently mean to enforce § 42-480(d) against facilitators when they, <u>inter alia</u>, provide RAL assistance to national banks whose interest rates on RALs exceed the rates permitted by subsection (d) (<u>see</u>, <u>e.g.</u>, Conn. Att'y Gen. Op. at 2 (opining that § 42-480 "is enforceable against facilitators of refund anticipation loans made by national banks")). Given that Pacific has no branches in Connecticut and offers RALs through the services of tax-return-preparation facilitators, Pacific has shown that even if subsection (d) is not to be enforced against national banks directly, its enforcement against facilitators that give assistance in the RAL process to national banks whose RAL interest rates exceed the ceilings imposed by that subsection would cause injury to Pacific by increasing its costs and/or constricting its access to potential RAL customers.

B.  <u>The Merits</u>

The doctrine of federal preemption is rooted in the Supremacy Clause of the United States Constitution, which provides that "the Laws of the United States . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary

- 17 -

notwithstanding." U.S. Const. art. VI, cl. 2. "Federal preemption of a state statute can be express or implied, and generally occurs: [1] where Congress has expressly preempted state law, [2] where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law, or [3] where federal law conflicts with state law." SPGGC, LLC v. Blumenthal, 505 F.3d 183, 188 (2d Cir. 2007) (internal quotation marks omitted); see generally Barnett Bank of Marion County, N.A. v. Nelson, 517 U.S. 25, 31 (1996) ("Barnett Bank"). A district court's determination as to preemption is a conclusion of law, which we review de novo. See, e.g., Drake v. Laboratory Corp. of America Holdings, 458 F.3d 48, 56 (2d Cir. 2006).

"[C]onflict pre-emption," which is at issue here, "occurs 'when compliance with both state and federal law is impossible, or when the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objective[s] of Congress,"'" United States v. Locke, 529 U.S. 89, 109 (2000) (quoting California v. ARC America Corp., 490 U.S. 93, 100-01 (1989) (quoting Hines v. Davidowitz, 312 U.S. 52, 67 (1941))). State law is in "irreconcilable conflict" with federal law, and hence preempted by federal law, when compliance with the state statute would frustrate the purposes of the federal scheme. Rice v. Norman Williams Co., 458 U.S. 654, 659 (1982); see, e.g., Barnett Bank, 517 U.S. at 31.

"[A] national bank . . . is an 'instrumentalit[y] of the Federal government, created for a public purpose, and as such necessarily subject to the paramount authority of the United States.'" Marquette National Bank of Minneapolis v. First of Omaha Service Corp., 439 U.S. 299, 308 (1978) ("Marquette") (quoting Davis v. Elmira Savings Bank, 161 U.S. 275, 283 (1896)). Accordingly, "'the States can exercise no control over [national banks], nor in any wise affect their operation, except in so far as Congress may see proper to permit.'" Watters v. Wachovia Bank, N.A., 127 S. Ct. 1559, 1567 (2007) (quoting Farmers' & Mechanics' National Bank v. Dearing, 91 U.S. 29, 34 (1875) (emphasis ours)).

Further, in order for conflict preemption to apply, the activity that is forbidden by state law need not be required by federal law; it is sufficient that the activity that state law prohibits is federally authorized. See, e.g., Barnett Bank, 517 U.S. at 31 (a federal statute permitting, but not requiring, national banks to sell insurance in small towns preempts a state statute forbidding them to do so); Franklin National Bank of Franklin Square v. New York, 347 U.S. 373, 375-79 (1954) ("Franklin") (federal statutes permitting, but not requiring, national banks to receive savings deposits preempt a state statute prohibiting national banks from using the word "savings" in their advertising).

In Watters, the Supreme Court ruled that a national bank's mortgage business, whether conducted by the bank itself or through an operating subsidiary, is subject to federal regulation, and not

- 19 -

to conflicting state regulations. It reached this conclusion in light of the principle that

> state law . . . may not curtail or hinder a national bank's efficient exercise of any other power, incidental or enumerated under the NBA. See Barnett Bank, 517 U.S., at 33-34; Franklin, 347 U.S., at 375-379.

Watters, 127 S. Ct. at 1567-68. "[S]tate regulation is preempted if it will 'significantly interfere with the national bank's exercise of its powers.'" Wachovia Bank, N.A. v. Burke, 414 F.3d 305, 314 (2d Cir. 2005) (quoting Barnett Bank, 517 U.S. at 33 (emphasis ours)), cert. denied, 127 S. Ct. 2093 (2007).

Most pertinently to the present case, the National Bank Act expressly permits national banks to "charge on any loan . . . interest at the rate allowed by the laws of the State, Territory, or District where the bank is located," 12 U.S.C. § 85. "The interest rate that [a national b]ank may charge . . . is thus governed by federal law." Marquette, 439 U.S. at 308. Given that "a national bank [i]s 'located' for purposes of [§ 85] in the State named in its organization certificate," id. at 310, or in a state in which it has its main or branch offices, see Wachovia Bank, N.A. v. Schmidt, 546 U.S. 303, 313 (2006), a state in which a national bank makes a loan may not permissibly require the bank to charge an interest rate lower than that allowed by its home state.

In the present case, the State Officials contend that, as a matter of principle, the NBA cannot preempt a state statute that regulates only non-banks, and that, in practice, the State's

anticipated regulation of facilitators that assist Pacific in making refund anticipation loans would not significantly interfere with Pacific's business of making such loans. The authorities and the record do not support their position.

In determining whether a state statute is preempted by the NBA, the Supreme Court has observed that the proper focus is not on whether the state statute regulates national banks directly but rather on whether it significantly interferes with national banks' authorized activity:

> We have never held that the preemptive reach of the NBA extends only to a national bank itself. Rather, in analyzing whether state law hampers the federally permitted activities of a national bank, we have focused on the exercise of a national bank's powers, not on its corporate structure.

Watters, 127 S. Ct. at 1570 (first emphasis ours; second emphasis in original). The NBA provides that a national bank may exercise "all such incidental powers as shall be necessary to carry on the business of banking" through the use of "duly authorized . . . agents." 12 U.S.C. § 24, Seventh. A state statute that forbade national banks to exercise their incidental powers through agents would thus plainly be preempted. We think it equally plain that a state statute cannot be allowed to avoid preemption by imposing such a prohibition indirectly. As indicated in SPGGC, LLC v. Blumenthal, if a national bank elects to carry out its business through unaffiliated non-bank entities, a state regulation that "actually affects the national bank's exercise of any authorized powers" and significantly impairs that exercise will be preempted although on its face it may appear to regulate only the actions of

- 21 -

the non-bank entities. 505 F.3d at 190-91; see, e.g., SPGGC, LLC v. Ayotte, 488 F.3d 525, 532-33 (1st Cir. 2007) ("Ayotte"), cert. denied, 128 S. Ct. 1258 (2008).

In Ayotte, the First Circuit dealt with a preemption claim involving a New Hampshire statute that prohibited entities from acting as agents for national banks in the issuance of gift cards that had expiration dates and as to which, prior to expiration, the holder would be subject to administrative fees. See id. at 528. The Ayotte Court noted the Watters Court's statement that the preemptive effect, vel non, of the NBA cannot be determined solely by reference to whether the state law in question directly regulates national banks themselves, but must also be assessed with respect to the state law's effect on a national bank's authorized activity. See 488 F.3d at 532. The Ayotte Court, pointing out that the NBA gives national banks the power to use the services of agents and that regulations of the Office of the Comptroller of the Currency contemplate that gift cards may be subject to expiration dates and administrative fees, see id. at 531, concluded that the New Hampshire statute, which prohibited third-party agents from assisting national banks in the issuance of gift cards with expiration dates and administrative fees, "frustrate[d] the exercise of that power," id. at 532. The Court stated that "[e]ven if the [New Hampshire statute] does not directly prohibit [the national bank] from engaging in such activity, it does so indirectly by prohibiting [the third party] from acting as [the national bank's] agent," and concluded that

- 22 -

> [i]t would be contrary to the language and intent of the National Bank Act to allow states to avoid preemption of their statutes simply by enacting laws that prohibited non-bank firms from providing national banks with the resources to carry out their banking activities.

Id. at 533.

We agree. If a state statute subjects non-bank entities to punishment for acting as agents for national banks with respect to a particular NBA-authorized activity and thereby significantly interferes with national banks' ability to carry on that activity, the state statute does not escape preemption on the theory that, on its face, it regulates only non-bank entities.

Further, in the present case, as a practical matter, the district court's ultimate interpretation of subsection (d), i.e., as not applying to facilitators when they are assisting in the offering or making of refund anticipation loans by national banks, was necessary in order to prevent that subsection from significantly obstructing national banks' RAL business. Under subsection (e) of § 42-480, a facilitator who violates subsection (d) would be subject, for each violation, to a fine of $500, plus, in a civil suit brought by either the borrower or the State Attorney General, damages of three times the RAL fee. Thus, if the volume of facilitator-assisted RALS issued by Pacific in Connecticut at NBA-authorized rates in a given year were to be the same as in the 2004 tax season (8,313), enforcement of § 42-480's $500-fine provision against those facilitators for such a year would result in fines totaling more than $4 million, of which $3,263,500 would be assessed against Jackson Hewitt alone.

- 23 -

The natural effect of the State's plan to enforce § 42-480 against facilitators that assist Pacific and similarly situated national banks in offering RALs at NBA-permitted rates would thus be either to prevent a facilitator from assisting such national banks with respect to RALs or to cause it to refuse such assistance unless the national banks agreed to forgo their NBA-permitted rates and limit themselves to the lower rates specified by § 42-480(d).

Plainly, losing the assistance of facilitators would pose a significant obstacle to the offering of RALs by national banks such as Pacific. There is no dispute that RALs "are typically offered in connection with tax preparation services" (Conn. Att'y Gen. Op. at 1); and the State Officials "admit that borrowers naturally seek such loans at the time they file their annual tax returns" (Defendants' Local Rule 56(a)(2) Statement ¶ 4). The district court thus noted that "[t]he services of a tax preparer are clearly essential to the efficient operation of RALs." 2006 WL 2331075, at *7. Accordingly, § 42-480, which the State anticipates enforcing against RAL facilitators that assist national banks whose interest rates exceed the subsection (d) ceiling, would deprive those banks either of NBA-authorized profits on RALs or of the typical and most natural and effective manner of marketing those loans. The district court properly concluded that the State's application of subsection (d)'s interest rate ceiling to facilitators assisting such national banks would significantly, albeit indirectly, curtail authorized

national bank activities and would thereby conflict with federal law.

Since a court should opt for an interpretation of state law that would avoid constitutional problems if such an interpretation is not contrary to the intent of the legislature, see, e.g., Jones, 529 U.S. at 857, and since it was permissible for the court to infer that the Connecticut legislature did not intend § 42-480 to impact the activities of national banks to the extent that it would conflict with federal law, the district court's interpretation of subsection (d) as not applying to facilitators assisting in the making of refund anticipation loans by national banks was appropriate.

## CONCLUSION

We have considered all of the State Officials' contentions on this appeal and have found them to be without merit. The judgment of the district court is affirmed.