11-91-cv
23-34 94th St. Grocery v. N.Y.C. Bd. of Health

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2011

(Argued: December 1, 2011    Decided: July 10, 2012)

Docket No. 11-91-cv

23-34 94TH ST. GROCERY CORP., KISSENA BLVD. CONVENIENCE STORE, INC.,
NEW YORK ASSOCIATION OF CONVENIENCE STORES, NEW YORK STATE ASSOCIATION
OF SERVICE STATIONS AND REPAIR SHOPS, INC., LORILLARD TOBACCO COMPANY,
PHILIP MORRIS USA INC., R.J. REYNOLDS TOBACCO CO., INC.,

Plaintiffs-Appellees,

v.

NEW YORK CITY BOARD OF HEALTH, NEW YORK CITY DEPARTMENT OF HEALTH AND
MENTAL HYGIENE, NEW YORK CITY DEPARTMENT OF CONSUMER AFFAIRS, THOMAS
FARLEY, DR., in his official capacity as Commissioner of the
New York City Department of Health and Mental Hygiene, and
JONATHAN MINTZ, in his official capacity as Commissioner of
the New York City Department of Consumer Affairs,

Defendants-Appellants.

Before:
            HALL, LYNCH, and CHIN, Circuit Judges.

        Appeal from a judgment of the United States

District Court for the Southern District of New York

(Rakoff, J.) granting summary judgment for plaintiffs,

declaring Article 181.19 of the New York City Health Code null and void.

AFFIRMED.

MIGUEL ESTRADA (Michael J. Edney, *on the brief*), Gibson, Dunn & Crutcher LLP, Washington, D.C., *for Plaintiff-Appellee Philip Morris USA Inc.*

Floyd Abrams, Joel Kurtzberg, Cahill Gordon & Reindel LLP, New York, New York, *for Plaintiffs-Appellees 23-34 94th St. Grocery Corp., Kissena Blvd. Convenience Store, Inc., New York Association of Convenience Stores, and New York State Association of Service Stations and Repair Shops, Inc.*

Noel J. Francisco, Jones Day, Washington, D.C., *for Plaintiff-Appellee R.J. Reynolds Tobacco Co., Inc.*

Alan Mansfield, Steven L. Saxl, Greenberg Traurig, LLP, New York, New York, *for Plaintiff-Appellee Lorillard Tobacco Co.*

DRAKE COLLEY (Nicholas R. Ciapetta, Edward F.X. Hart, *on the brief*), for Michael A. Cardozo, Corporation Counsel of the City of New York, New York, New York, *for Defendants-Appellants.*

Patrick J. Carome, Paul R.Q. Wolfson, Daniel P. Kearney, Jr., Jeremy S.

-2-

Winer, Wilmer Cutler Pickering Hale and Dorr LLP, New York, New York, *for Amicus Curiae American Legacy Foundation et al.*

Robin S. Conrad, Kathryn Comerford Todd, National Chamber Litigation Center, Gene C. Schaerr, Andrew C. Nichols, Winston & Strawn LLP, Washington, D.C., *for Amicus Curiae Chamber of Commerce of the United States of America.*

Seth E. Mermin, Thomas Bennigson, Public Good Law Center, Berkeley, California, *for Amicus Curiae Los Angeles County Department of Public Health et al.*

Daniel J. Popeo, Cory L. Andrews, Richard A. Samp, Washington Legal Foundation, Washington, D.C., *for Amicus Curiae Washington Legal Foundation and Allied Educational Foundation.*

CHIN, Circuit Judge:

In 2009, the Board of Health of the City of New York adopted a resolution requiring all tobacco retailers to display signs bearing graphic images showing certain adverse health effects of smoking. The City did so as part of its continuing campaign to discourage cigarette use by educating

-3-

New Yorkers about the dangers of smoking.  The district

court held below that the resolution is null and void

because it is preempted by federal labeling laws.  We agree,

and therefore affirm.

## BACKGROUND

### A.   *Federal Regulation of Cigarettes:   The Labeling Act*

#### 1.   *Purpose*

In 1965, Congress enacted the Federal Cigarette

Labeling and Advertising Act (the "Labeling Act").[1]  15

U.S.C. §§ 1331-41.  The purpose of the Labeling Act is:

> to establish a comprehensive Federal
> program to deal with cigarette labeling
> and advertising . . . , whereby --
>
> (1) the public may be adequately informed
> about any adverse health effects of
> cigarette smoking by inclusion of warning
> notices on each package of cigarettes and
> in each advertisement of cigarettes; and

---

[1]     The Labeling Act has been amended several times,
most significantly in 1970, 1984, and 2009.  *See* Public
Health Cigarette Smoking Act of 1969, Pub. L. No. 91-222, 84
Stat. 87 (1970); Comprehensive Smoking Education Act, Pub.
L. No. 98-474, 98 Stat. 2200 (1984); Family Smoking
Prevention and Tobacco Control Act (the "FSPTCA"), Pub. L.
No. 111-31, 123 Stat. 1776 (2009).  The provisions quoted in
this section reflect the law as it currently stands.

> (2) commerce and the national economy may
> be (A) protected to the maximum extent
> consistent with this declared policy and
> (B) not impeded by diverse, nonuniform,
> and confusing cigarette labeling and
> advertising regulations with respect to
> any relationship between smoking and
> health.

15 U.S.C. § 1331. The Labeling Act thus seeks to strike a balance between informing the public about the dangers of cigarette smoking and protecting commerce and the national economy.

### 2. *Labeling Requirements*

The Labeling Act prescribes the content and format of warnings that must appear on cigarette packages and in cigarette advertisements. *Id.* § 1333. Specifically, all cigarette packages and advertisements must contain the phrase "Surgeon General's Warning" followed by one of the following four cautions:

> (1) Smoking Causes Lung Cancer, Heart
> Disease, Emphysema, And May
> Complicate Pregnancy.

> (2) Quitting Smoking Now Greatly Reduces
> Serious Risks to Your Health.

        (3)   Smoking By Pregnant Women May Result
              in Fetal Injury, Premature Birth,
              And Low Birth Weight.

        (4)   Cigarette Smoke Contains Carbon Monoxide.

*Id.* § 1333(a)(1).[2]   The warnings must be "in conspicuous and

---

        [2]    Until 1984, the required warning was much less
specific:  "The Surgeon General Has Determined That
Cigarette Smoking Is Dangerous To Your Health."  *See* Public
Health Cigarette Smoking Act of 1969, 84 Stat. at 88.  The
current, more comprehensive warnings were mandated in
response to a 1983 FTC report indicating that many consumers
were unaware of the particular illnesses smoking could
cause.  *See* S. Rep. No. 98-177, at 6-7 (1983) (50% of women
unaware that smoking increases the risk of stillbirth and
miscarriage, 30% of public unaware of relationship between
smoking and heart disease, 20% unaware that smoking causes
cancer).

        The FSPTCA, which Congress passed in 2009,
prescribed a new set of textual warnings (with an emphasis
on the potentially fatal effect smoking can have) and
directed the FDA to issue regulations requiring graphic
labels to appear on all cigarette packaging.  *See* FSPTCA
§ 201(a), 123 Stat. at 1842-45.

        The new labeling requirements have not yet gone
into effect, however, because a district court recently
declared that the FDA's proposed regulations violated the
First Amendment.  *See R.J. Reynolds Tobacco Co. v.
U.S.F.D.A.,* No. 11-1482, -- F. Supp. 2d --, 2012 WL 653828
(D.D.C. Feb. 29, 2012).  Specifically, the court held that
the proposed regulations were not "narrowly tailored to
achieve a compelling government interest."  *Id.* at *6.  It
suggested that the FDA could make the regulations less
restrictive by, *inter alia*, reducing the size of the graphic
image or selecting images "that conveyed only purely factual

legible type in contrast by typography, layout, or color

with all other printed material on the package." *Id.* §

1333(b).  Furthermore, the Labeling Act mandates that

manufacturers rotate these warnings "in alternating

sequence" on packages, and in advertisements, of each brand.

*Id.* § 1333(c).

### 3.  *Preemption*

Congress also included a preemption provision in

the Labeling Act, limiting the extent to which states may

regulate the labeling, advertising, and promotion of

cigarettes.  *Id.* § 1334.  First, the preemption provision

---

and uncontroversial information rather than gruesome images
designed to disgust the consumer."  *Id.* at *7.

The Sixth Circuit has recently addressed the
constitutionality of the FSPTCA itself.  It held that the
FSPTCA's "requirement that tobacco packaging and advertising
. . . include[] color graphic and non-graphic warning labels
satisfies the requirements of the First Amendment."
*Discount Tobacco City & Lottery, Inc. v. United States*, 674
F.3d 509, 531 (6th Cir. 2012).  While the Sixth Circuit
upheld the constitutionality of the statute's graphic-image
requirement generally, it did not opine on the
constitutionality of the FDA's proposed regulations, as that
issue was not before it on appeal.  *Id.* at 568-69 & n.17
(distinguishing its holding from that of the D.C. district
court).

prohibits states from requiring any additional "statement relating to smoking and health, other than the statement required by [§ 1333(a),] on any cigarette package." *Id.* § 1334(a). Second, it provides that "[n]o requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes" labeled in conformity with the Act. *Id.* § 1334(b).

> Finally, subsection (c) states:
>
> Notwithstanding subsection (b), a State or locality may enact statutes and promulgate regulations, based on smoking and health, . . . imposing specific bans or restrictions on the time, place, and manner, but not content, of the advertising or promotion of any cigarettes.

*Id.* § 1334(c).

## B.   *The Resolution*

On September 22, 2009, the Board of Health (the "Board")[3] adopted a resolution amending Article 181.19 of

---

[3]   The Board, which operates under the umbrella of the Department of Health, oversees the New York City Health Code. *See Meet the N.Y.C. Bd. of Health*, N.Y.C. Dep't of Health and Mental Hygiene, http://www.nyc.gov/html/doh/html/

-8-

the New York City Health Code. As amended, the Article

provides:

> (a) Any person in the business of
> selling tobacco products face-to-
> face to consumers in New York City
> shall prominently display tobacco
> health warning and smoking cessation
> signage produced by the Department
> [of Health].
>
> . . .
>
> (c) Persons who engage in face-to-face
> sales of tobacco products to
> consumers in New York City shall
> prominently display the signs
> required by subdivision (a) of this
> section by posting:
>
>> (1) one "small sign"[4] on or within 3
>> inches of each cash register or
>> each place where payment may be
>> made so that the sign(s) are
>> unobstructed in their entirety
>> and can be read easily by each
>> consumer making a purchase; or
>>
>> (2) one "large sign"[5] at each
>> location where tobacco products

---

boh/boh.shtml (last visited July 9, 2012).

[4] A "small sign" is one that does not exceed 144 square inches. *See* Resolution at (b)(2)(a).

[5] A "large sign" is one that does not exceed 576 square inches. *See* Resolution at (b)(2)(b).

-9-

are displayed so that:

(a)  the sign(s) are
     unobstructed in their
     entirety and can be read
     easily by each person
     considering a tobacco
     product purchase; and

(b)  in such a way that the
     distance between the bottom
     of the sign(s) and the
     floor shall be no less than
     four feet, and the distance
     between the top of such
     sign(s) and the floor shall
     be no more than seven feet.

N.Y.C. Health Code, § 181.19 (the "Resolution"), *invalidated*

*by 23-34 94th St. Grocery Corp. v. N.Y.C. Bd. of Health*, 757

F. Supp. 2d 407 (S.D.N.Y. 2010).

The Department produced three signs, any one of

which retailers could display to comply with the Resolution.

One shows an x-ray image of a cancerous lung over the

warning "Smoking Causes Lung Cancer."  Another depicts a

photograph of a decaying, extracted tooth over the warning

"Smoking Causes Tooth Decay."  The third is an MRI of a

brain with damaged tissue resulting from a stroke, and

states, "Smoking Causes Stroke."  Each sign also reads,

"Quit Smoking Today.  Call 311 or 1-866-NYQUITS."

Commissioner Farley declares that each image is "true and medically accurate."  (Farley Decl. at 10).

The City passed the Resolution to "promote further reductions in smoking prevalence in New York City."  (Notice of Adoption at 2).  The City attributed the continued widespread use of cigarettes to a "lack of awareness and comprehension of the negative health outcomes associated with tobacco use."  (*Id.* at 1).  Accordingly, it sought to reduce smoking by broadening its informational campaign.

Specifically, the City observed that cigarette advertising was particularly "prominent" in retail locations, but the "retail environment lack[ed] information about tobacco health risks."  (N.Y.C. Dep't of Health and Mental Hygiene, Proposal to Require Health Warnings and Smoking Cessation Information Where Tobacco is Sold (the "Proposal") at 3 (June 24, 2009)).  It also noted research indicating that "pictorial warnings" were "more effective and engaging than text-only warnings," especially among youths.  (Notice of Adoption at 3).  The City concluded that

requiring graphic images at retail locations would "[c]ounteract tobacco advertising" and "further de-normalize smoking."  (Proposal at 9; Notice of Adoption at 4).

## C.   *Procedural History*

On June 2, 2010, plaintiffs-appellees -- two cigarette retailers, two trade associations, and three of the nation's largest cigarette manufacturers -- initiated the action below against the Board, the Department of Health, the Department of Consumer Affairs, and their respective commissioners, seeking a declaration that the Resolution was preempted by federal labeling laws and violated their First Amendment rights.  On June 25, 2010, plaintiffs moved to enjoin preliminarily the enforcement of the Resolution.  On June 28, 2010, the parties stipulated that enforcement of the resolution would be stayed until the earlier of (a) fourteen days after the district court's ruling on the preliminary injunction or (b) January 1, 2011. Defendants moved for summary judgment on August 13, 2010.

On December 29, 2010, the district court granted summary judgment for the plaintiffs, declaring Article

181.19 null and void on the ground that it was preempted by federal labeling laws.[3] The district court did not reach the First Amendment issue. Judgment was entered accordingly on December 31, 2010. This appeal followed.

## DISCUSSION

### A. Applicable Law

#### 1. Standard of Review

"We review *de novo* a district court's application of preemption principles." *N.Y. SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 103 (2d Cir. 2010) (per curiam); *see Goodspeed Airport LLC v. E. Haddam Inland Wetlands & Watercourses Comm'n*, 634 F.3d 206, 209 n.3 (2d Cir. 2011); *Pac. Capital Bank, N.A. v. Connecticut*, 542 F.3d 341, 351 (2d Cir. 2008) ("A district court's determination as to

---

[3] Although the district court refers to "plaintiffs' motion for summary judgment," the docket does not indicate that plaintiffs ever formally moved for summary judgment. In any event, a district court has the ability to grant summary judgment in favor of a party that has not moved for summary judgment, *see First Fin. Ins. Co. v. Allstate Interior Demolition Corp.*, 193 F.3d 109, 114-15 (2d Cir. 1999); *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir. 1991), and defendants have not objected to this procedural aspect of the district court's ruling.

preemption is a conclusion of law, which we review *de novo*.").

  2.  ***Preemption Generally***

       To determine whether a state or local law is preempted by federal law, we look to Congress's intent. *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) (congressional intent is "the ultimate touchstone" of preemption analysis) (internal quotation marks omitted). "When Congress expressly codifies its preemptive intent in statutory form, our analysis 'begins with the language of the statute.'" *Jones v. Vilsack*, 272 F.3d 1030, 1034 (8th Cir. 2001) (quoting *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 536 (2001)); *see also CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993). We assume "that the ordinary meaning of that language accurately expresses the legislative purpose." *Cipollone*, 505 U.S. at 532 (Blackmun, J., concurring) (internal quotation marks omitted); *see also Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 194 (1985).

The existence of an express preemption clause, however, "does not immediately end the inquiry because the question of the substance and scope of Congress'[s] displacement of state law still remains." *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008). Accordingly, courts may look to the statute as a whole to determine the extent to which "Congress intended federal law to occupy the legislative field." *Id.; accord In re WTC Disaster Site*, 414 F.3d 352, 372 (2d Cir. 2005) ("If the text of the statute is ambiguous . . . as to the extent of an intended preemption, the meaning of the statute may be gleaned from its context and from the statutory scheme as a whole, or by resort to the normal canons of construction and legislative history."); *see also Reilly*, 533 U.S. at 541 ("State action may be foreclosed . . . by implication from the depth and breadth of a congressional scheme that occupies the legislative field . . . ."); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 (1983) (considering "the plain language . . . , the structure of the Act, and its legislative history").

"We assume that a federal statute has not supplanted state law unless Congress has made such an intention clear and manifest."  *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005) (internal quotation marks omitted); *accord N.Y. State Restaurant Ass'n v. N.Y.C. Bd. of Health*, 556 F.3d 114, 123 (2d Cir. 2009) ("[W]here the text of a preemption clause is ambiguous or open to more than one plausible reading, courts have a duty to accept the reading that disfavors preemption.") (internal quotation marks omitted).

### 3.  *Preemption of State-Mandated Cigarette Warnings*

The labeling requirement and preemption provision of the Labeling Act express Congress's determination that "the prescribed federal warnings are both necessary and sufficient to achieve its purpose of informing the public of the health consequences of smoking."  *Altria*, 555 U.S. at 79.  Accordingly, states may not require that additional warnings be displayed by the manufacturer.  *See id.*  "[B]oth of the Act's purposes are furthered by prohibiting States

from supplementing the federally prescribed warning . . . ."
*Id.*

In *Vango Media, Inc. v. City of New York*, this Court invalidated one such effort to supplement federal warnings. 34 F.3d 68 (2d Cir. 1994). There, a City ordinance required that one public health message pertaining to the dangers of smoking be displayed for every four tobacco advertisements displayed on top of taxi cabs. *Id.* at 70. We held that this was a requirement "with respect to" advertising, and therefore preempted by the Labeling Act. *Id.* at 73-75. Although the ordinance did not impact the appearance of the advertisements themselves, it "impose[d] conditions on [the] display of cigarette advertisements." *Id.* at 74-75. We held that Congress intended to preempt any local law that "treads on the area of tobacco advertising, even if it does so only at the edges." *Id.* at 74.

B. *Application*

We conclude that the Resolution is preempted by the Labeling Act because it is a requirement "with respect

to the advertising or promotion" of cigarettes, under § 1334(b). We recognize our duty to assume that a local regulation is not preempted "unless Congress has made such an intention clear and manifest." *Bates*, 544 U.S. at 449. We find, however, that Congress has clearly manifested its intent to preempt the Resolution through (1) the language of the preemption provision and (2) the overall statutory scheme.

### 1. *The Language of Section 1334(b)*

The Labeling Act prohibits states from imposing any "requirement or prohibition based on smoking and health . . . with respect to the advertising or promotion of . . . cigarettes." 15 U.S.C. § 1334(b). The parties agree that the Resolution is a "requirement or prohibition based on smoking and health." (Appellants' Br. at 26; Appellees' Br. at 20). They dispute, however, whether the Resolution is "with respect to the advertising or promotion of" cigarettes. Plaintiffs argue that it is a requirement with respect to promotion; defendants argue that it is only a requirement with respect to sale. (Appellees' Br. at 20-21;

Appellants' Br. at 24-25).  We agree with plaintiffs that the Resolution is a requirement with respect to the promotion of cigarettes.

First, we discuss the meaning of the word "promotion" and the types of activities that constitute promotion.  Second, we discuss why the requirements of the Resolution affect promotion in a way that causes them to fall within section 1334(b)'s preemptive scope.

a.  *"Promotion"*

The word "promotion" is not defined in the Labeling Act.  Hence, we look to the word's plain meaning.  Specifically, we consider the "the ordinary, common-sense meaning of the word[]."  *United States v. Dauray*, 215 F.3d 257, 260 (2d Cir. 2000); *see Harris v. Sullivan*, 968 F.2d 263, 265 (2d Cir. 1992) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.") (internal quotation marks omitted).

*Merriam-Webster* defines "promotion" as "the act of furthering the growth or development of something;

especially:  the furtherance of the acceptance and sale of merchandise through advertising, publicity, or discounting." Merriam Webster's Collegiate Dictionary 931 (10th ed. 2000). A broad array of activities may fall under this umbrella. *See* U.S. Dep't of Health & Human Servs., Preventing Tobacco Use Among Young People:  A Report of the Surgeon General 159-60 (1994).  Distribution of coupons and free samples, for example, would obviously be classified as promotional activity as they further the sale of merchandise. Promotional activity may also include the "place[ment] and display [of] products in ways that will maximize the opportunity for purchase."  *Id.*  Indeed, many companies pay additional fees to have their product displayed in a desirable location at a retail outlet.  *See generally* Benjamin Klein & Joshua D. Wright, *The Economics of Slotting Contracts*, 50 J.L. & Econ. 421 (2007) (referring to "promotional shelf space").  Therefore, to the extent a product display furthers the sale of merchandise, it is a type of promotion.

### b.  *The Requirements of the Resolution Are "With Respect To" Promotion.*

The Resolution requires that every tobacco retailer place signage either (1) next to the register or (2) next to each tobacco product display.  Option (2) directly affects the promotion of cigarettes.  By its terms, it affects the display of cigarettes, which is a type of promotion.  Specifically, a display is a form of publicity that can further the sale of merchandise.  It is an opportunity for the manufacturer to present the consumer with its trade dress, product pricing, and any deals -- or sales -- that the manufacturer may be offering.  Placing a graphic warning adjacent to a product display necessarily affects -- or "treads on," *Vango Media*, 34 F.3d at 74 -- the content of the image projected and the message conveyed to the consumer by that display.

Whether option (1) affects promotion is a closer call, as it does not explicitly reference the display of tobacco products.  Indirectly, however, it is likely to affect product display, and therefore, product promotion.

New York law requires retailers to place cigarettes either

"behind a counter . . . accessible only to [store]

personnel" or "in a locked container."  *See* N.Y. Pub. Health

Law § 1399-cc(7) (McKinney 2012).  As a result, the vast

majority of retailers choose to place cigarettes behind the

counter, where the registers are located, prominently

displayed in plain view but accessible only to store

personnel.  In such circumstances, placing signage at the

register is practically the same as placing it at the point

of display.  Furthermore, the Resolution may very well

prompt retailers to choose *not* to place cigarettes near the

register -- a decision that would affect promotion.[4]

---

[4]     We take judicial notice of a poster recently
published on TobaccoFreeNYS.org.  *See United States v.
Akinrosotu*, 637 F.3d 165, 168 (2d Cir. 2011) (taking
judicial notice of a website).  The poster contains a photo
of three children at a convenience store counter behind
which there is a large wall display of cigarettes.  The wall
display includes signs showing cigarette brand names,
advertisements, and "special" pricing information.  Above
the photo appears the caption, "This is tobacco marketing.
Kids who see it are more likely to smoke."  *See* www.tobaccof
reenys.org/Our-Kids-Have-Seen-Enough-Campaign.html (last
visited July 9, 2012).  The point, of course, is that
displays of a consumer product, accompanied by brand posters
and pricing information, increase awareness of that product,
and make it more likely that a consumer will purchase it.

The City's primary argument is that the Resolution is a not a requirement with respect to the *promotion* of cigarettes, but rather, a requirement with respect to the *sale* of cigarettes.  Specifically, it argues that it is not regulating or restricting a manufacturer's ability to advertise or promote; it is simply requiring any establishment that sells cigarettes to post warning signs, regardless of whether any advertising or promotion occurs at the particular retail establishment.  (Appellants' Br. at 24).

While it is true that the Resolution only explicitly requires action on the part of the seller, not the manufacturer, the City ignores the practical effect the Resolution has on the manufacturer's promotional activity at the retail location.  Specifically, requiring a warning sign in close proximity to a cigarette display has practically the same effect as requiring a warning on the display itself, thereby directly affecting the content of the promotional message conveyed to consumers at the point of

The display is therefore a form of promotion.

-23-

display.  Indeed, by the City's own admission, one of the reasons it chose to regulate the point of sale was to "deliver[] a different message" from that delivered by the cigarette manufacturers and to "counteract tobacco advertising."  (*Id.* at 27; Proposal at 9).  Requiring that the manufacturers' message be countered at the point of purchase is surely a form of regulating promotion.  *Cf.* *Vango Media*, 34 F.3d 68 (ordinance did not impose direct burden on manufacturer, but was nonetheless preempted because advertising was conditioned on public health message).[5]

---

[5]    At oral argument, a question arose as to whether the Resolution could survive preemption if section (c)(2) of the Resolution were severed.  (Tr. at 18-21, 25).  We do not decide that question here.

The City also points out (essentially in passing) that the Resolution applies to all tobacco products, whereas the Labeling Act only applies to cigarettes.  (Appellant Br. at 12).  The City thus implies that the Resolution should survive at least to the extent it applies to non-cigarette tobacco products.  We reject that argument.  First, it is not clear how any part of the Resolution could be severed such that it would apply only to non-cigarette tobacco products.  Second, this argument was not sufficiently preserved in the district court or on appeal, and is therefore waived. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 n.4 (2d Cir. 2000) ("single, conclusory, one-sentence

To be clear, we do not hold that every state or
local regulation affecting promotion violates the Labeling
Act's preemption clause. Section 1334(c) provides a safe
harbor for laws regulating the time, place, or manner of
promotional activity.[6] For example, the City's requirement
that retailers display cigarettes only behind the counter or
in a locked container, *see* N.Y. Pub. Health L. § 1399-cc(7),

---

argument is insufficient to preserve any issue for appellate
review"); *United States v. Brauning*, 553 F.2d 777, 780 (2d
Cir. 1977) (where party has had ample opportunity to make an
argument to the trial court, but has failed to do so,
"waiver will bar raising the issue on appeal").

[6] The City did not argue in its briefs that the
Resolution is a time, place, or manner restriction under §
1334(c). At oral argument, counsel for the City briefly
addressed the issue in response to a question from the
Court. He stated, "If the district court was actually
correct that [display is] a promotional activity, well, then
the requirement aimed at the location of the display would
be a requirement on the place of the activity and that --
and for that reason it would fall within the saving clause
of 1334(c)." (Tr. at 8).

The Resolution, however, is not "aimed at the
location of the display." In other words, it does not limit
the places in which manufacturers or retailers may display
cigarettes. Rather, it requires that a sign be placed at
the register or <u>wherever</u> cigarettes are displayed at the
retail location. Therefore, the Resolution is not a "place"
restriction within the meaning of 1334(c).

-25-

clearly affects promotional display, but would fall within this exception, as it only affects the place and manner of the display.  Only requirements or prohibitions directly affecting the *content* of the manufacturers' promotional message to consumers are preempted.

### 2.   *The Overall Statutory Scheme*

To the extent the language of the preemption provision itself is or may be ambiguous, our conclusion is supported by the overall statutory scheme.

The Labeling Act seeks to strike a balance between two competing interests:  (1) ensuring that Americans are adequately warned about the health consequences of smoking; and (2) protecting free commerce.  *See* 15 U.S.C. § 1331. The Resolution affects this balance by seeking to advance the first interest at the expense of the second.  The requirement that retailers post graphic images might serve to further educate consumers, but it does so by imposing a direct burden on cigarette retailers.

The Resolution was born of the assumption that the federally mandated warnings did not adequately or

effectively inform consumers of the health risks of smoking. (Notice of Adoption at 1-3; Proposal at 3). Specifically, the City apparently believed that "there remain[ed] significant gaps in smokers' understanding of these risks." (Notice of Adoption at 2). It also observed that the "retail environment lacks information about tobacco health risks" (Proposal at 3), and highlighted research indicating textual warnings (such as the ones currently mandated by Congress) were not as effective as pictorial warnings (Notice of Adoption at 3). In other words, the City was not satisfied with the balance struck by Congress, and it sought to shift the balance further in favor of discouraging smoking, at the expense of free commerce.

The City's desire to tilt the balance more in favor of educating consumers is understandable. Indeed, the City may seek to tilt the balance further by imposing time, place, or manner restrictions, and by launching its *own* anti-smoking campaigns. But what the City cannot do is seek to affect the balance by requiring a manufacturer or retailer to display supplemental content at the point of

purchase. Specifically, it cannot require retailers to post warning signs adjacent to cigarette displays, because doing so would affect the content of the retailers and manufacturers' promotional efforts. The legislative scheme contemplates that Congress, and only Congress, will amend the content of warnings required of manufacturers to educate consumers, *see* S. Rep. No. 98-177, at 6-7; FSPTCA § 201(a), without interference or supplementary efforts by state or local authorities.

Allowing state or local authorities to mandate supplementary warnings on or near cigarette displays risks the creation of "diverse, nonuniform, and confusing" regulations. *See* 15 U.S.C. 1331(2)(B). Indeed, there is a risk of such nonuniform regulation here. Congress has directed the FDA to prescribe graphic warnings for cigarette packages. FSPTCA § 201(a) ("the Secretary shall issue regulations that require color graphics depicting the negative health consequences of smoking"). While new FDA regulations have not yet gone into effect, Congress intends for some form of graphic image to appear on packages in the

near future.[7]  The Resolution would require additional

graphic warnings to be placed in close proximity to the

federally mandated ones.  Such competing, and potentially

duplicative, warnings are not contemplated by the federal

statutory scheme.

To be sure, we do not hold that supplementary

warnings are, in and of themselves, preempted by the

Labeling Act.  We hold only that requiring retailers to post

graphic supplementary warnings adjacent to cigarette

displays is preempted.  Of course, states and localities

remain free to impose time, place, and manner restrictions

on the advertising and promotion of cigarettes, and to

engage in anti-smoking campaigns using their own resources.

Our holding today should not be read to curtail in any way

---

[7]    Notably, some of the images proposed by the FDA
were similar in nature to the ones proposed by the City
(e.g., a cancerous lung; a decaying tooth); others were very
different (e.g., a drawing of crying baby; a picture of a
corpse).  *See New Cigarette Labels Feature Graphic Images*,
USA Today (June 21, 2011), http://mediagallery.usatoday.com/
New-cigarette-lables-feature-graphic-images/G2394 (last
visited July 9, 2012).

state and locally funded efforts to further educate consumers and counter cigarette advertising and promotion.

## CONCLUSION

For the foregoing reasons, we hold that the Resolution, Article 181.19 of the New York City Health Code, is preempted by the Labeling Act. Accordingly, we affirm the judgment of the district court declaring the Resolution null and void. In light of this determination, we do not decide whether the Resolution violates the First Amendment.